## WILSON W. FAY *vs.* SOLOMON S. GRAY.

**Suffolk.    Nov. 13, 1877. — June 28, 1878.    COLT & AMES, JJ., absent.**

If a receipt states that a certificate of stock in a corporation is received as collateral security, and contains an agreement that the pledgee may sell " on one day's notice," parol evidence of a contemporaneous agreement that the pledgee might use the stock is inadmissible.

If a certificate of stock in a corporation, pledged as collateral security, is transferred by the pledgee to a creditor of his own, the pledgor may treat this as a conversion ; and the fact that the pledgee had a greater number of shares standing to his credit on the books of the corporation is immaterial.

CONTRACT for money lent.    The defendant filed a declaration in set-off, on an account annexed, for the proceeds of the sale of certain shares of stock pledged by him to the plaintiff as security for the loan.

At the trial in the Superior Court, before *Gardner*, J., it was admitted that on January 4, 1876, the plaintiff lent the defendant $1000 at two per cent. a month, receiving as security a certificate for twenty-five shares of stock in the American Molded Collar Company, numbered 614, and standing in the name of Louise Page, on the back of which was a printed form of transfer, with the date of January 4, 1876, written in, and signed by Page.

The plaintiff signed and gave to the defendant the following receipt : " Boston, January 4, 1876.    Received from Solomon S. Gray, twenty-five shares of American Molded Collar Stock, as collateral on loan of $1000 at two per cent. a month, on one day's notice."    It was admitted at the trial that the words " one day's notice " referred to the notice of sale of the collateral security, and that the certificate was lent to the defendant by Page and was rightfully in his possession.

The plaintiff testified that on January 26, 1876, he filled up the blanks on the back of the certificate by inserting his own name as transferee; that he wished on that day to return to one Eli Fay thirty-five shares of stock in that company which he owed him, and for convenience, having another certificate for ten shares in the same company, he wrote and signed on the back of the certificate for twenty-five shares, under the assignment of Page, the words, " Transfer to Eli Fay, of Taunton, the

within twenty-five shares," and then took the other certificate of stock for ten shares, and assigned the same to Eli Fay, and wrote thereunder and signed the words, "Please send certificate of thirty-five shares to Eli Fay of Taunton," and sent the two certificates by mail to the defendant, who was treasurer of the company.

It also appeared that on receipt of these two certificates a new certificate for thirty-five shares was, in the absence of the defendant, sent to Eli Fay by Page, who was a clerk in the defendant's office, and that on the return of the defendant, on or before February 4, 1876, she informed him of the whole transaction.

The plaintiff offered to prove that, before and at the time of the signing of the receipt of January 4, 1876, an oral agreement was made that the stock might be used by him, and, in default of payment, be sold at private sale; but the judge excluded the evidence.

On May 8, 1876, the plaintiff, after notice to the defendant on May 2, sold twenty-five shares of the stock for $800, the market price at the time.

The books of the company showed that, at all times during the transaction, the plaintiff had to his credit more than twenty-five shares of stock in the company, exclusive of that transferred to Eli Fay. The plaintiff testified, upon cross-examination, that he could not tell how many of the shares standing to his credit were owned by him in his own right absolutely, and how many as collateral only.

The plaintiff contended that twenty-five shares of stock in this corporation were like any other twenty-five shares, and that he was not limited in any respect by the certificate of twenty-five shares given him by the defendant, but that he could use this certificate and these shares as he pleased, sell and dispose of them to his own use, provided he had at all times twenty-five shares of the stock standing to his credit upon the books of the company in certificates of larger or smaller numbers of shares than this certificate of twenty-five shares.

The presiding judge instructed the jury that, when the defendant received this certificate of twenty-five shares as collateral security, he was bound to treat it as he would any other collateral security of personal property, with this exception, that

he had the right to have a certificate issued to himself, or to have a new certificate issued to himself or to some other person, so that the defendant could hold it subject to the agreement between himself and the plaintiff ; that he had no right to convert the certificate and shares to his own use, sell, dispose of and transfer the same for his own benefit, unless he immediately replaced the certificate by another of twenty-five shares ; and that he was to hold a certificate of twenty-five shares of this stock set apart and ready to be transferred to the defendant whenever he should call for it, according to the terms of the agreement, or until the plaintiff sold it, as the agreement of the parties and the law required. The plaintiff objected to this instruction.

The jury returned a verdict for the defendant for $10, being the difference between the amount of the loan and the value of the stock on January 26, 1876 ; and the plaintiff alleged exceptions.

*S. B. Allen & A. Hemenway*, for the plaintiff.

*J. W. Rollins*, for the defendant.

SOULE, J. The transfer on the back of the certificate of stock, signed by Louise Page, was absolute in terms; but, in order to protect the defendant, the plaintiff signed the receipt of January 4, 1876, in which he admits that he received the stock as collateral security for a loan, and was not entitled to sell it till after one day's notice of his intention to do so. This receipt contains in concise language the contract under which the plaintiff took the stock, and it was not competent for him to prove by parol that, when he took it and signed the receipt, a different arrangement from that stated in the receipt was made. As pledgee, he was bound to keep the stock ready for delivery to the defendant on payment of the debt at maturity, or at any time afterward before sale in accordance with the terms of the pledge. Meanwhile he had no right to sell or lend or pledge the stock. The evidence rejected was inadmissible therefore, because its only tendency was to show that the contract made when the stock was pledged was different from that set forth in writing at the time.

The instructions to the jury, so far as they are recited in the exceptions, were substantially correct. They recognize the right

of the plaintiff to have the stock transferred to himself, and state, with sufficient precision, the duty of the plaintiff as to retaining the stock in his own hands or control till maturity of the debt. The plaintiff's testimony showed that the transfer which he made, or caused to be made, to Eli Fay, was for the purpose of returning to him stock which the plaintiff owed him, and put the stock beyond the plaintiff's control. The instructions are to be considered with reference to this state of facts, which differs materially from the facts in *Day* v. *Holmes*, 103 Mass. 306, 310. There the pledgee assigned the collateral stock to third persons, in order not to injure his credit by appearing to own too much of it, but kept it in his own control by taking assignments in blank from those third persons, by means of which he could deliver the stock at once, in case the pledgor should become entitled to it. *Exceptions overruled.*