ALEXANDER G. CUMNOCK, executor, *vs.* INSTITUTION FOR
SAVINGS IN NEWBURYPORT.

Suffolk.　March 30. — July 3, 1886.　W. ALLEN & HOLMES, JJ., absent.

A declaration alleged that the plaintiff delivered to the defendant, to be held and
safely kept by him, certain shares of stock in a corporation, as collateral
security for the payment of a promissory note signed by the plaintiff, with
authority to sell the same and apply the proceeds towards the payment of the
note, in case of default in the payment thereof by the plaintiff; that the defend-
ant, in consideration of such pledge and delivery by the plaintiff, promised and
undertook to hold and keep said stock, and redeliver the same to the plaintiff on
payment of the note; that, on or before the maturity of the note, the plaintiff,
in order to provide for the payment of the note at maturity, had effected a valid
contract for the sale of said stock at a certain price per share, the stock to be
delivered and assigned on or after maturity of the note; that, at the maturity of
the note, the plaintiff was ready and willing to pay said debt and receive back the
stock, and offered to redeem the same, and demanded the same of the defendant,
who informed him that the note and certificates had been lost, and that it was
out of his power to return either the note or the certificates; that the defendant
refused and neglected for a long time to return said certificates to the plain-
tiff, or permit him to redeem the same; that, by reason of said loss, refusal,
and neglect, the plaintiff lost his said sale and the benefit thereof, and was de-
prived of his right to sell the same, as he could have done; that, about fifteen
months after the maturity of the note, said stock was found by the defendant,
and the debt to him discharged, and the stock received back by the plaintiff,
and sold by him at a greatly diminished price, whereby he had suffered the loss
of a certain sum, which was caused solely by the defendant's neglect to keep
safely the property so pledged as collateral security. *Held*, on demurrer, that
the declaration did not state a legal cause of action.

ACTION, alleged in the writ to be in contract or tort, in two
counts. The second count, which was the only one relied on,
was as follows: " And the plaintiff says that he is the executor
of the will of Charles W. Freeland, late of said Boston, deceased,
testate; that the said Charles W. Freeland did, in his lifetime,
to wit, on June 15, 1883, for value received from said defendant
corporation, make his certain writing obligatory, and deliver the
same to the defendant, whereby he promised said defendant
corporation to pay to it or its order the sum of $24,000 on the
fifteenth day of June, 1884, with interest semiannually; and
that said Freeland did deliver unto said defendant corporation,
as collateral security for said loan, to be held and safely kept by
them, certain property of which he was the owner, to wit, four-
teen shares of the capital stock of the Amoskeag Manufacturing

Company, a corporation organized and doing business in the State of New Hampshire; that said Freeland did also give to said defendant corporation, at their request, full and special authority to sell said collateral, and apply the proceeds towards payment of said note, in case of default in the payment thereof by him, and that said defendant corporation did then and there, in consideration of such pledge and delivery by said Freeland, promise and undertake faithfully to hold and keep said stock, and redeliver the same to the plaintiff on the satisfaction and payment of said note; that, on or before the maturity of said note, said plaintiff, in order to provide for the payment of said note at maturity, had effected a valid contract for the sale of the said stock at the rate of $2000 per share, said stock to be delivered and assigned on or after maturity of said note, to wit, June 15, 1884; and that, before the maturity of said note, said defendant corporation notified the plaintiff of the loss by them of said note, requesting a new acknowledgment of said indebtedness, which the said plaintiff gave. And the plaintiff says that afterwards, to wit, on the fifteenth day of June, 1884, he was ready and willing to pay the said indebtedness, and receive back the stock aforesaid, and offered to redeem the same, and demanded the same of the said defendant corporation, but was then informed by said defendant that said certificates also had been by them lost, and that it was out of their power so to return either said note or said certificates of stock, and said defendant refused and neglected, and for a long time continued to refuse and neglect, to return said certificates of stock to said plaintiff, or permit him to redeem the same; that, by reason of said loss, refusal, and neglect, said plaintiff lost his said sale and the benefit thereof, and was deprived of his right to sell the same as he could have done, and that the market value of said stock was on June 15, 1884, $2000 per share; that since said date of maturity, to wit, on or about September, 1885, said stock was found by said defendant corporation, and said debt to said defendant discharged, and said stock received back by said plaintiff, and sold by him at a greatly diminished figure, being the best price that he could obtain, to wit, at $1950 per share, whereby the estate of said testator has suffered the loss of $700, which the plaintiff says was caused solely by the neglect of said

defendant to safely keep said property so pledged as collateral as aforesaid. Wherefore he says that the defendant owes him said sum of $700, and interest thereon from the twenty-fourth day of October, 1885."

The defendant demurred to the declaration, on the ground that it did not set forth a legal cause of action. The Superior Court sustained the demurrer, and ordered judgment for the defendant; and the plaintiff appealed to this court.

*F. Rackemann*, for the plaintiff.

*D. L. Withington*, for the defendant.

FIELD, J. The second count apparently proceeds upon the theory that the payment of the note and the return of the stock were to be concurrent acts. But the contract of the defendant was to keep the certificates of stock with due care, and to return them to the plaintiff, if the note was paid at maturity, or when, after maturity, the note was paid, unless the stock was meanwhile lawfully sold to pay the debt. The contract of pledge is collateral to the contract to pay the debt. The promise is to return the property pledged when the debt is paid. The pledgee can maintain an action to recover the debt, without any offer to restore the property pledged; *Taylor* v. *Cheever*, 6 Gray, 146; and he can maintain an action for money lent after he has converted the property pledged by an unlawful sale, and can recover the amount of the debt less the amount realized by the sale, if the defendant pleads this in set-off. *Fay* v. *Gray*, 124 Mass. 500.

Notwithstanding what was said in *Cortelyou* v. *Lansing*, 2 Caines Cas. 200, we think that the assumption is false that a contract of pledge as a security for the payment of money is analogous to a bilateral executory contract, in which the two parties mutually promise to do concurrent acts, and the promise of one is the consideration of the promise of the other. The modern authorities, therefore, require a tender of payment of the debt to enable the pledgor to maintain trover for a conversion of property pledged, unless the lien created by the pledge has been otherwise discharged. The distinction between a tender of payment of a debt due, and an offer to perform one of two mutual promises to do concurrent acts, is well known. *Cook* v. *Doggett*, 2 Allen, 439. The count does not allege a good tender

at common law. *Dunham* v. *Jackson*, 6 Wend. 22. *Bakeman* v. *Pooler*, 15 Wend. 637.

*Talty* v. *Freedmen's Savings & Trust Co.* 93 U. S. 321, was replevin of a certificate of indebtedness, brought by the pledgor against a purchaser from the pledgee, who bought *bona fide* and without notice or knowledge of the plaintiff's claim; and it was held that a previous tender was necessary, and that an offer to pay was not equivalent to a tender.

In *Lewis* v. *Mott*, 36 N. Y. 395, the action was brought by the assignee of the pledgor against the vendee of the pledgee. The court held that there "was no ground upon which the defendant could be held liable to an account, or upon which the plaintiff's right to redeem could be enforced against the defendant," but the Chief Justice proceeded to consider the action as if it were tort for illegal conversion. The pledgor had offered in writing to pay the defendant the debt for which the securities were pledged, and had demanded the securities, and the defendant had refused to comply with the demand. The Chief Justice says: " Clearly, on no theory was he [the pledgor] entitled to them [the securities], except upon payment of the amount of the lien, or a tender and refusal. Such tender has not been made. The offer to pay is not the equivalent for an actual tender."

*Donald* v. *Suckling*, L. R. 1 Q. B. 585, was detinue by the pledgor against a sub-pledgee of the pledgee, to whom the pledgee had delivered the debentures pledged, as security for a loan to him larger than the debt for which the debentures were originally pledged. Both debts remained unpaid; and it was held that the plaintiff could not maintain the action, because there had been no tender of the sum originally secured by the pledge.

*Halliday* v. *Holgate*, L. R. 3 Ex. 299, was trover by the assignee in bankruptcy of the pledgor against the pledgee for a wrongful sale of the property pledged. There had been no payment or tender of payment of the debt, and the court refused to sustain the action even for nominal damages, on the ground that, to maintain trover, the plaintiff must have the right of immediate possession, which he did not have until the debt was paid.

The Massachusetts cases declare that a tender is necessary to enable the pledgor to maintain trover against the pledgee for a conversion of securities, when the lien created by the pledge has not been otherwise discharged. *Jarvis* v. *Rogers*, 13 Mass. 105. *Jarvis* v. *Rogers*, 15 Mass. 389. *Hancock* v. *Franklin Ins. Co.* 114 Mass. 155. See *Hathaway* v. *Fall River National Bank*, 131 Mass. 14. Neither the English nor the Massachusetts cases, however, determine what amounts to a sufficient tender, although there are expressions which indicate that a tender good at common law is required.

When replevin or detinue is brought, there may be a substantial reason why there should be an actual tender, because the plaintiff, if he recover judgment, recovers or may recover the possession of the property, and the court might well order the money tendered paid into court before entering such a judgment. There is a technical reason why a formal tender may be held necessary in trover ; because, if the lien created by the pledge has not been otherwise discharged, it may be held that it can be discharged only by the payment of the debt, or, if the defendant will not receive payment, by a tender of payment, which is the only thing the common law considers as in any respect an equivalent of payment; and trover can only be maintained when the lien has been discharged, and the plaintiff is entitled to the immediate possession of the property. But as the damages in trover are the value of the property less the amount of the debt, except for this technical reason, a want of a formal tender would not be a greater objection against maintaining trover than against maintaining an action for a breach of the contract to keep the property safely, and to deliver it to the pledgor on payment of the debt. Perhaps in contract, strictly speaking, no breach is shown by a failure to return the security unless the debt is paid or there has been a good common law tender of payment, but there are cases which hold that a formal tender is unnecessary. *Cortelyou* v. *Lansing, ubi supra. Fletcher* v. *Dickinson,* 7 Allen, 23. *Wilson* v. *Little,* 2 Comst. 443. The last was an action on the case for wrongfully selling stock, but whether trover or not is uncertain. In each of these cases, however, the property pledged had been wrongfully sold by the pledgee, which was in itself a

conversion and a breach of the contract.  In *Fletcher* v. *Dickinson, ubi supra,* the action was contract; the defendant, by the sale and assignment of certain mortgages, held by him as collateral security, had received sufficient money to pay the plaintiff's debt to him ; there had been, in fact, an offer in writing to pay the debt, and, although the plaintiff " did not tender or exhibit any money, his counsel was prepared to pay the notes, and so informed the defendant."  The court held that the sale was illegal, and said, " A formal tender of the amount of the notes would have been a useless ceremony, such as the law never requires," citing *Cortelyou* v. *Lansing, ubi supra.*

The distinction between an unconditional offer to pay a debt, accompanied with a present ability and intention to pay, and a formal tender, is certainly technical, and the tendency of the law undoubtedly is to ignore technicalities which serve no useful purpose, and to administer the same substantive law in one form of action as in another, where different forms of action are permitted.  Such an offer to pay would undoubtedly be sufficient to maintain a bill in equity to redeem the property pledged, and we do not deem it necessary to decide whether such an offer would not be sufficient to enable the pledgor to maintain either tort or contract against a pledgee who refused to accept the offer and return the property pledged, or whether any offer or tender at all is necessary to maintain tort or contract against a pledgee who has converted the property pledged by a wrongful sale of it, and applied the proceeds of the sale to the payment of the debt.

In the present case, no conversion of the stock is alleged, and, for that reason alone, the second count is not a good count in trover.  A refusal of the defendant to receive payment of the debt is not alleged, nor any offer to pay the debt, except on condition that the stock be returned.  It is doubtful if this count alleges that the plaintiff had the money to pay the note when he alleges that he offered to redeem the stock.  The gist of the plaintiff's complaint, under this count, is that the plaintiff, by the neglect of the defendant to keep the stock safely until the maturity of the note, was prevented from redeeming the stock at the maturity of the note as he otherwise would have done, whereby the plaintiff lost the benefit of a sale of

the stock which he had made, and this implies that the lien created by the pledge continued until the debt was finally paid. If the defendant had, by the want of due care, suffered the property pledged, while in his possession, to be damaged, he undoubtedly would be liable to the plaintiff. But the property pledged was, on payment of the debt, restored to the plaintiff, uninjured and entire. The construction we put upon the second count is that the plaintiff, even if he had the right to do so, did not elect to treat as a conversion, or as a breach of contract, the defendant's refusal to restore the stock, when he offered at the maturity of the note to redeem it, but permitted the defendant to retain it as security for the debt while the debt remained unpaid. The plaintiff could have stood upon his rights, have paid or tendered payment of the debt at maturity, then demanded the stock, and, on the defendant's refusal to deliver it, have brought his action for the value. Whether trover could have been maintained for stock lost, need not be decided. See *Bowlin* v. *Nye*, 10 Cush. 416.

The plaintiff forbore to insist upon his rights. In consideration of this forbearance, the defendant made no promise to the plaintiff to pay him anything, and committed no tort and no breach of contract in retaining the stock until the plaintiff paid his note, and the property pledged was returned uninjured.

All the justices sitting concur in the result; and a majority of them concur in the reasons given in this opinion.

*Judgment affirmed.*