Merrick, RJ.
This is a summary process action to recover possession of commercial premises and use and occupancy charges. Summary judgment was entered in favor of the plaintiff, and the defendant has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8A.
The parties’ Mass. R. Civ. R, Rule 56 affidavits and other materials indicate the following: The plaintiff-landlord, Eugene Snow, Trustee of Byco Realty Trust (“Landlord”) entered into a lease of retail space with the original tenant, Michael J. Cotton, Trustee of Deli Trust (“Cotton”) for a term of five years from March 1,1990 to February 28, 1995, with a five year renewal option. The lease provided that the tenant’s obligation for monthly rent was to be increased annually by tax and operating cost escalation clauses and a provision for annual cost of living increases after the first five years. The lease further provided that there should be no assignment of the lease without the written consent of the landlord, which would not be unreasonably withheld.
The premises were equipped and used for a small restaurant. During the eight years following the lease execution, the restaurant repeatedly changed hands, resulting in a diz2ying number of successive assignments of the lease to new owners.
On June 2,1994, the Landlord consented to an assignment of the lease from Cotton to Len An (“An”) and Bolislav Guseynov (“Guseynov”), and an amendment of the lease to provide two additional five year options running through February 28, 2005.[3] This assignment included no requirement of consent to any future assignment.
On May 26,1995, the Landlord agreed to an assignment of the lease from An and Guseynov to Arben Keka (“Keka”). This agreement also contained no requirement of consent to any future assignment.
On February 1, 1996, Keka sold the restaurant to Nicholas Bisbikis (“Bis-bikis”), and assigned the lease to Bisbikis without the written consent of the Landlord. Purchase money financing was provided by Alex Kolokythas (“Kolokythas”). As security, Bisbikis gave to Kolokythas both a security interest in the property and store assets, and a “Conditional Assignment of Lease.” *228 The Conditional Assignment gave Kolokythas the right to take over the lease in the event of a default on the financing. Kolokythas would then have the right, in the event he foreclosed on the assets, to acquire the premises along with its contents. Also in connection with the transaction, Kolokythas and the Landlord entered into a “Consent to Conditional Assignment.”
Under the terms of the “Consent to Conditional Assignment,” the Landlord gave his assent to the Conditional Assignment of the Lease. The parties further agreed that Kolokythas, as Assignee, would receive a copy of every notice sent by the Landlord to the tenant, and that the Landlord would not terminate the lease for the tenant’s default without affording the Assignee the opportunity to cure any such default. With respect to the issues raised on this appeal, the Consent further recited:
Upon written notice given by Assignee to Landlord...., certifying to Landlord that the Tenant is in default of any of the Tenant’s and/or any guarantor of Tenant’s obligations and liabilities secured by said Conditional Assignment of Lease, and that the Assignee has duly and validly exercised the option provided to it under the Conditional Assignment of Lease to terminate Tenant’s interest in and to the Lease, and upon the cure by Assignee within fifteen (15) days thereafter of all defaults of said tenant then existing under the lease, the Assignee shall become the Tenant under the Lease, and the Landlord agrees to recognize Assignee as Tenant’s assignee under the Lease....
The “Consent to Conditional Assignment” identifies Kolokythas as “Assignee” and notes that the “term includes the successors and assigns of said Alex Kolokythas.”
Finally, the “Consent to Conditional Assignment” provides: ‘This consent is restricted to the particular sublease hereby authorized and the covenant in the Lease against subleasing shall remain in full force and effect.”
Thereafter, the business changed hands twice more, being sold in 1996 by Bisbikis to one Shenouda and in January, 1997, by Shenouda to Costas Galatas (“Galatas”). In each case, the Landlord consented to the assignment of what had been Bisbikis’ interest in the lease, and the consent provided that it was “restricted to the particular sublease hereby authorized and the covenant in the Lease against subleasing shall remain in full force and effect.” Galatas defaulted on his obligation to Kolokythas. Kolokythas foreclosed, pursuant to his security interest, in the assets of the business, including the “contracts,” and on December 30,1997 sold them to Moenes Solimán (“Solimán”). Solimán resold them the same day to Adel Fitian (“Fitian”), the defendant in this case. Up to this point, no action had been taken under the “Conditional Assignment of Lease” or the “Consent to Conditional Assignment.”
In the belief that the foreclosure bill of sale amounted to a valid assignment of the lease, Fitian then attempted to make arrangements with the Landlord. On January 6, 1998, he identified himself as the new owner and offered to pay the January rent, which the Landlord refused. The Landlord indicated his preference for entering into a new lease, and declined consent to Fitian continuing under the old lease. A notice to quit, which claimed that Fitian was a tenant at sufferance or a trespasser, was served on Fitian on January 7, 1998. On January 20,1998, Kolokythas executed an assignment of his rights under the “Conditional Assignment of Lease” to Fitian.
This summary process action was filed on February 9, 1998. At a pretrial *229 hearing, the Landlord was ordered to file a motion for summary judgment, which was submitted on March 11, 1998 and heard on March 19, 1998. In the interim, however, Fitian sent the following letter to the Landlord on March 9, 1998:
Adel Fitian, as assignee of all Alex Kolokythas’ rights under the conditional assignment of the lease of 1250 Main Street, Waltham, Massachusetts dated February 13, 1996 is hereby exercising such rights by giving written notice.
Mr. Fitian certifies to Landlord that Tenant Costa is in default of any of the Tenant’s and/or any guarantor of Tenant’s obligation and liabilities.
Mr. Fitian is willing and able to cure the default within the fifteen day period upon receiving an account from you detailing the amount in default.
The trial judge allowed the Landlord’s summary judgment motion, and ordered judgment for both possession and use and occupancy. The defendant has appealed that order, and has posted a bond in the amount set by the trial court.
1. Fitian originally claimed the right to occupy the premises as successor (through Shenouda and Galatas) of Bisbikis’ interest; i.e., as tenant, subject to the Conditional Assignment to Kolokythas. The Landlord’s response was that Fitian could not occupy the premises because the Landlord had not consented to any assignment of the lease. It is true that a “clause that prohibits a lessee from assigning a lease without the lessor’s consent is intended to protect the lessor’s interest in determining the suitability of those to whom the lessor will lease his premises. [Citation omitted]. Violation of that clause renders the lease voidable by the lessor” Healthco, Inc. v. E. & S. Realty Assoc., 400 Mass. 700, 702 (1987). Fitian argued, however, that once the Landlord consented to the first assignment from Cotton to An and Guseynov, no other consent was necessary to subsequent assignments. This proposition is generally true.
[C]onsistent with the primordial rule of Dumpor’s Case, 76 Eng. Rep. 1110 (K.B. 1578),... when a lease contains a covenant requiring the lessor’s prior written consent to an assignment and when that consent is obtained, the lessee is not required to procure the lessor’s consent to subsequent assignments. Further consent is unnecessary because once the condition is satisfied, it is no longer operative.
Healthco, Inc. v. E. & S. Realty Assoc., supra at 703. ‘The [Dumpor’s Case] rule in its origin rested upon quite technical reasoning concerning the nonappor-tionability of conditions.” Aste v. Putnam’s Hotel Co., 247 Mass. 147, 151-152 (1923). While the principle may be of questionable benefit in modern landlord/ tenant law, we would not reexamine a rule so recently acknowledged by the Supreme Judicial Court. We note that there is nothing in the rule to prevent the parties from agreeing, as a condition of an assignment to which consent is necessary, to a requirement of consent to a subsequent assignment.
Under the rule in Dumpor’s Case, the Landlord’s consent was not necessary for the assignment of the lease from An and Guseynov to Keka in May, 1995, and no consent was necessary for the ordinary assignment from Keka to Bis-bikis in February, 1996. The Landlord’s consent was required for the condi *230 tional assignment to Kolokythas, because it was part of a larger transaction requiring the Landlord’s assent to additional obligations. The Landlord’s consent to the assignments to Bisbikis, Shenouda and Galatas was conditioned upon consent to subsequent subleases. Fitian’s original claims to be a successor under those assignments through his purchase of the assets foreclosed upon under the security agreement must fail, as he would require the consent of the Landlord.
2. Fitian’s claim now depends upon his status as successor to Kolokythas’ rights under the “Conditional Assignment of Lease” and the “Consent to Conditional Assignment.” As we have noted, the Landlord’s consent to the Bisbikis-Kolokythas financing transaction was necessary because the Landlord was undertaking, in connection with that financing, the additional obligations of giving notice of any default by the tenant to the conditional assignee and permitting the conditional assignee, under certain circumstances, to take over as tenant and to cure past defaults by the tenant. The rights of both parties to this appeal turn upon the interpretation of the “Consent to Conditional Assignment” which Kolokythas purported to assign to Fitian in January, 1998 and under which Fitian attempted to exercise his rights on March 9,1998, prior to the summary judgment hearing on March 19,1998.
The Landlord asserts that Kolokythas could not, without the Landlord’s consent, assign his rights under the “Consent to Conditional Assignment” because that document provided: ‘The consent is restricted to the particular sublease hereby authorized and the covenant in the Lease against subleasing shall remain in full force and effect.” Fitian now argues, however, that he did not take a sublease from Kolokythas, but rather an assignment of Kolokythas’ right under the “Consent to Conditional Assignment” to become a tenant upon performing the stated conditions. He points to the contract definition of “Assignee,” which “includes the successors and assigns of said Alex Kolokythas.”[4]
“Interpretation is directed to the meaning of the terms of the writing in the light of the circumstances.... “ Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973). “A contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Lewis v. Chase, 23 Mass. App. Ct. 673, 677 (1987), citing Shane v. Winter Hill Fed. Sav. & Loan Assn., 397 Mass. 479, 483 (1986). In this connection, the paramount fact about the “Conditional Assignment of Lease” and the “Consent to Conditional Assignment” is that they were not leases as such but were financial documents securing Bisbikis’ debt to Kolokythas, who had no interest in occupying the premises. See Patriot Gen. Life Ins. Co. v. CFC Investment Co., 11 Mass. App. Ct. 857 (1981). The purpose of the overall transaction was to permit Kolokythas’ rights to be transferable and give him, in the event of the obligor’s default, a package of business equipment and a lease to sell in order to recoup. That purpose would not be achieved unless Kolokythas was able to convey the conditional assignment with the debt or to someone who purchased at foreclosure the property securing the debt.
*231 Taken together, the two provisions recited above mean that Kolokythas could assign his rights under the “Consent to Conditional Assignment” without the Landlord’s consent, but that once Kolokythas or his assign exercised the right to become a tenant, that right could not further be conveyed without the Landlord’s consent.
3. We turn to the issue of whether Fitian properly exercised his rights under the “Consent to Conditional Assignment.” On that point, the instrument provides that the assignee becomes the tenant upon proper notice (which was given) “and upon the cure by Assignee within fifteen (15) daysthereafter of all defaults of said tenant then existing under the lease.” Fitian made no payments, but requested a statement of the amount due from Galatas so that he could “cure” the defaults. The Landlord has refused to give such a statement. The contract is silent on whether he must. That Fitian was willing and able to pay is established by his posting, as a condition of this appeal, of the amount ultimately found by the trial judge to be due. The questions are whether the Landlord was obliged to tell Fitian the amount due under the lease, including the various escalation and cost of living clauses, so that he could cure the default within 15 days, and whether, in the absence of that information, Fitian is barred from becoming the tenant for failure to cure within 15 days.
Where the parties to a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances will be supplied by the court. [Citations omitted]. In a sense, when an essential term of a contract is missing, that contract is ambiguous and it falls to us to interpret the contract sensibly in the light of the terms of the document taken as a whole, [citations omitted] and surrounding facts (which in this case we derive from the complaint and from the affidavit in support of the motion for summary judgment).
Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Auth., 7 Mass. App. Ct. 336, 342 (1979).
Applying that standard, it seems plain to us that the Landlord should have provided Fitian with a statement of the amount due. Moreover, Fitian should not forfeit his rights because of a failure to cure within 15 days which was caused by the Landlord’s refusal to provide the necessary information.
It should be noted that we are at this pass because of conscious decisions by each of the parties to play legal “hardball.” The Landlord sought to prevent Fitian from becoming his tenant by refusing him the information necessary to cure, leaving Fitian in great uncertainty about his position for several months. Fitian, for his part, would have been better advised to tender at least a modest estimate of what was due, rather than returning the Landlord’s volley with a denial of any rent at all during those same months. Given the facts in this case, it may be that the tender of an estimated sum would have been “a useless ceremony such as the law never requires.” Cumnock v. Institution for Sav. in Newburyport, 142 Mass. 342, 347 (1886). ‘The distinction between an unconditional offer to pay a debt, accompanied with a present ability and intention to pay, and a formal tender, is certainly technical, and the tendency of the law undoubtedly is to ignore technicalities, which serve no useful purpose.” Id. Shortly after he gave notice of the assignment and the exercise of his option, however, Fitian did post the amount found by the court to be then due, as we have noted.
In any event, the Landlord may not be heard to claim that Fitian must give up possession because of a failure to cure, while he persists in his refusal to *232 provide an accounting of the amount due. Indeed, continued failure to provide the accounting could be a basis for a summary judgment against the Landlord on the possession issue.
The trial court’s summary judgment for the plaintiff is vacated.
So ordered.

 The Landlord had previously assented to a sublease of 904 square feet of the premises, a transaction which has no bearing on the present case.

 In the preparation of contract documents and in arguing this case, the parties appear to have ignored the significant distinctions between an assignment of a lease and a sublease. See Lebel v. Backman, 342 Mass. 759, 763 (1961) and Marcelle, Inc. v. Sol & S. Marcus Co., 274 Mass. 469, 472 (1931). While those differences are relevant, the parties have not briefed them and we do not decide the case on that basis.