DIAMOND CRYSTAL BRANDS, INC. vs. BACKLEAF, LLC.

No. 02-P-518.

Middlesex. October 8, 2003. - February 24, 2004.

Present: GELINAS, COHEN, & MILLS, JJ.

*Real Property,* Lease. *Contract,* Lease of real estate, Construction of contract. *Landlord and Tenant,* Lease as contract, Covenant to pay rent. *Consumer Protection Act,* Unfair or deceptive act.

Although the judge in a commercial lease case erred in ruling that the lease was ambiguous with respect to the plaintiff lessee's obligation to pay additional rent for electricity, this court affirmed the judge's order that the defendant repay the plaintiff the overage that it had paid for electricity, where the lease, rather than being ambiguous, was missing a specific formula for calculating the lessee's share of the electricity costs, which the judge could supply. [504-506]

This court concluded that, as a matter of law, the defendant commercial lessor's conduct in demanding that the plaintiff lessee pay as additional rent electricity costs that exceeded the total actual cost for the entire building at issue amounted to a wilful and knowing violation of G. L. c. 93A, § 11, where there was no evidence showing any good faith by the defendant in its conduct. [506-509]

CIVIL ACTION commenced in the Superior Court Department on November 17, 2000.

The case was heard by *Wendie I. Gershengorn,* J.

*Stephen A. Greenbaum* for the defendant.

*Garrett G. Gillespie* for the plaintiff.

MILLS, J. This is a commercial lease case involving construction of a provision respecting the lessee's obligation to pay additional rent for electricity. We conclude that a landlord's unreasonable position in construction of the lease provision subjects him to damages under G. L. c. 93A.

*Background.* The plaintiff, Diamond Crystal Brands, Inc. (Diamond), sold its commercial real estate in Wilmington, improved by a building which it had occupied entirely, to the

defendant, Backleaf, LLC (Backleaf), which agreed to lease back to Diamond approximately sixteen percent of the building space. For a period of about ten months prior to the sale, Diamond had ceased manufacturing at the building and used only office space. The parties expected that after closing the transaction, Backleaf and Diamond would share occupancy of the building, with Diamond continuing to use the office space and Backleaf occupying the remainder. It was agreed that Diamond would pay a share of utilities. Because there was no separate electrical meter, however, the parties inserted the following provision into a rider to Diamond's lease:

> "4(b) In addition to the base rent, the LESSEE shall pay, as 'Additional Rent':
>
> ". . .
>
> "(ii) LESSEE's share of electricity . . . charges attributable to LESSEE's occupancy of the leased premises, said share to be based on the LESSEE's historical costs of electricity . . . charges experienced by the LESSEE from the date manufacturing ceased at the building in or about November 1999 to the date of the purchase of the property by LESSOR[.]"

Diamond's historical costs of electricity were not set forth in the rider. After execution of the lease, it came to light that while Diamond was sole occupant, the electrical costs averaged $7,924 per month (ranging from $4,500 to $11,500). However, after both parties occupied the building, the electrical costs averaged only $2,500 per month (ranging from $2,200 to $4,800) for the entire building. Despite the drop in costs, Backleaf as lessor nonetheless demanded a monthly payment of $7,924 for electrical costs.

Backleaf billed Diamond for electricity at the level of $7,924 per month on the day after the lease came into effect, September 5, 2000. Backleaf threatened to terminate Diamond's lease unless it paid the amounts demanded. Backleaf served Diamond with a ten-day notice to quit only six days later, on September 12, 2000. Diamond paid Backleaf under protest the very next day. Over a seven-month period, Diamond paid approximately $41,000 under protest, although the actual costs for electricity

for the entire building during this period totaled only approximately $18,000.

Diamond commenced this action seeking a declaration that it "is obligated to pay only those electricity charges which result from its occupancy at the Leased Premises," and subsequently amended its complaint to add a claim under G. L. c. 93A, § 11. Backleaf counterclaimed, seeking a declaration that Diamond was obligated to pay $7,943.76 per month in electricity charges.[1] After a bench trial, a Superior Court judge made findings of fact and ruled that the lease rider provision was ambiguous insofar as it indicated that Diamond's obligations would be "based on" its historical electricity costs. The judge specifically found that the parties never intended that Backleaf receive a windfall (i.e., that Diamond should pay as its proportionate share of electrical costs three times the actual cost of electricity for the entire building). The judge also ruled that Backleaf was not liable under G. L. c. 93A, § 11. The judge initially left calculation of the sum Diamond should pay for electricity to the parties, without ordering any specific refund to Diamond, but on Diamond's motion to alter or amend the judgment, she ordered that if the parties did not decide on a sum within five days, then Backleaf was to repay Diamond $30,121.

The parties have cross-appealed. Backleaf challenges the judge's ruling that the lease was ambiguous and her consideration of extrinsic evidence, and Diamond challenges her failure to award damages on its G. L. c. 93A count.

*Discussion.* a. *Lease interpretation.* The judge ruled the lease provision ambiguous and therefore turned to extrinsic evidence to ascertain the intent of the parties. It was on this basis that she ordered Backleaf to repay Diamond Crystal no less than $30,121. While we affirm her repayment order, we do so on somewhat different grounds, as we conclude that there was no ambiguity, but rather a missing term.

It was for the judge to rule as matter of law if there was an

---

[1]Backleaf has not provided a reason for the discrepancy between the amount claimed by Backleaf and the amount that the judge found to be the average monthly charge Diamond had paid. The two figures, $7,943.76 and $7,924, referring sometimes to a ten-month period and other times to a nine-month period, both appear repeatedly throughout the record without clarification by the parties or the judge.

ambiguity in the lease. See *Allstate Ins. Co. v. Bearce*, 412 Mass. 442, 446-447 (1992) (interpretation of written contract provisions is question of law); *Lumber Mut. Ins. Co. v. Zoltek Corp.*, 419 Mass. 704, 707 (1995) (same); *Lexington Ins. Co. v. All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995) (same); *Seaco Ins. Co. v. Barbosa*, 435 Mass. 772, 779 (2002) ("If a contract, in this case a lease, is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment"). We review the judge's threshold finding of an ambiguity for error of law. See *Edwin R. Sage Co. v. Foley*, 12 Mass. App. Ct. 20, 26 (1981) ("conclusions of law are subject to broad review and will be reversed if incorrect"). Under Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996), her determination of the parties' intent in her findings of fact will be upheld unless clearly erroneous.

"A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998). In this case, despite the lack of precision as to the formula for assessing Diamond's portion of the electrical costs, the terms "attributable to lessee's occupancy" mean with sufficient clarity that Diamond would pay an approximation of its share of the actual electrical costs. No terms in the provision contradict this intention, and no other meaning is plausible. By stating that Diamond's future share of electrical costs would be "based on" its historical costs, the lease provision merely indicated that the two figures should correlate, not that they must be equivalent. Although the judge specifically ruled that the "based on" terminology was ambiguous, we see no such ambiguity after reading the provision as a whole. Only Backleaf's thoroughly tortured reading of the lease could distort the operating cost sharing provision in this lease to mean that the lessee should pay three times the actual electrical costs for the entire building, thus conferring a windfall upon the landlord and abandoning the duty of good faith and fair dealing. Backleaf's proposed reading is unreasonable and inconsistent with common sense. The ruling that the lease was ambiguous was error.

Rather than an ambiguity of the sort determined by the judge,

there was a missing term in an otherwise unambiguous provision. The parties failed to include a specific formula for calculating the lessee's share beyond indicating that it would in some way correlate to Diamond's historical costs as the sole occupant of the building. It was therefore the task of the trial judge to fill in the missing term in accordance with the intent of the parties. See *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1979).[2]

There is no error in the judge's findings of fact as to the parties' intent, and we defer in particular to her findings of credibility (or lack thereof) among the witnesses at trial. Because she found that (1) "[i]t was always the intent of the parties to charge Diamond . . . for the electricity actually used by that company during the period of the lease," (2) "the intent of both parties was to find a method to allocate the electricity charges equitably, based upon usage, between the parties," and (3) "never was such a windfall to the landlord intended or bargained for by the parties," it was not erroneous for the judge to declare that Diamond's share must not exceed the total actual cost for the entire building.[3]

b. *Diamond's G. L. c. 93A claim.* Despite finding that Backleaf was not entitled to the windfall it demanded, the judge found that Backleaf's conduct did not amount to bad faith or an unfair and deceptive practice in violation of G. L. c. 93A, §§ 2 and 11. Diamond argues that the judge found all the elements of a violation, yet erred in failing to order c. 93A relief.

General Laws c. 93A, § 11, prohibits unfair or deceptive acts

---

[2]In *Fay, Spofford, supra*, the court, in referring to a missing term in an engineering contract, indicated that the contract was "[i]n a sense . . . ambiguous," and then proceeded to fill in a reasonable term, consistent with the parties' intentions. See *Williams* v. *Metzler*, 132 F.3d 937, 948 (3d Cir. 1997). The Restatement (Second) of Contracts § 204 (1981) expresses the principle forthrightly: "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." See Farnsworth, Disputes Over Omissions in Contracts, 68 Colum. L. Rev. 860 (1968).

[3]On cross appeal, Diamond has not alleged error in the judge's calculation of Diamond's share at the total actual cost for the entire building, rather than an approximation of its actual usage, which may or may not have been less. As a result, we need not remand for further calculations of Diamond's share. The record does not contain any basis for a recalculation by this court.

or practices among those engaged in trade or commerce. *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991). If the unfair or deceptive act was wilfully or knowingly committed, then the court must award no less than double and no more than treble damages. G. L. c. 93A, § 11. Even if the conduct falls short of being wilful or knowing, an unfair or deceptive act that violates G. L. c. 93A, § 2, requires the payment of reasonable attorney's fees and costs. G. L. c. 93A, § 11.

Not every breach of contract constitutes a violation of G. L. c. 93A, see *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 100-101 (1979),[4] but a knowing violation of contractual obligations for the purpose of securing unwarranted benefits does. *Anthony's Pier Four, Inc.*, *supra* at 474, citing *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 857 (1986). See *Atkinson* v. *Rosenthal*, 33 Mass. App. Ct. 219, 225-226 (1992). Courts must consider whether the nature, purpose, and effect of the challenged conduct is coercive or extortionate. *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 420 Mass. 39, 42-43 (1995). See *Anthony's Pier Four, Inc.*, *supra.*

"Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a G. L. c. 93A violation is a question of law." *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 73 (2001), quoting from *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991), *S.C.*, 412 Mass. 703 (1992). "A ruling that conduct violates G. L. c. 93A is a legal, not a factual, determination." *R. W. Granger & Sons*, *supra*, citing *Anthony's Pier Four, Inc.*, *supra.* In *Anthony's Pier Four, Inc.*, *supra* at 475, even though the trial judge had not ruled the defendant's conduct to be a violation of G. L. c. 93A, the Supreme Judicial Court determined that the conduct violated G. L. c. 93A as matter of law, and further ruled the conduct wilful and knowing, despite the lower court's failure to make any findings of wilfulness or knowledge. The court stated that "[a] judge need not make an *express* find-

---

[4]See *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979), *S.C.*, 12 Mass. App. Ct. 990 (1981).

ing that a person wilfully or knowingly violated G. L. c. 93A, § 2, as long as the evidence warrants a finding of either." *Id.,* quoting from *Service Publications, Inc.* v. *Goverman,* 396 Mass. 567, 578 n.13 (1986).

In this case, the judge was not asked and, thus, did not make a finding as to the parties' conduct under the duty of good faith and fair dealing. However, the judge did not merely rule that Backleaf's conduct did not violate G. L. c. 93A; she also found as fact that Backleaf did not act in bad faith and that Backleaf did not make its demands "in order to gain an unexpected economic advantage or to extort a concession." We owe deference to a trial judge's findings of fact and will not overturn them unless clearly erroneous. See Mass.R.Civ.P. 52(a); *Kitner* v. *CTW Transp., Inc.,* 53 Mass. App. Ct. 741, 747-748 (2002). It is Diamond's burden on appeal to establish that the judge's finding was clearly erroneous by demonstrating that it was not supported by "any reasonable view of the evidence, including all rational inferences of which it was susceptible." *Kitner, supra* at 748, quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. 501, 510 (1997). This Diamond has done.

We have already said that Backleaf's interpretation was not only wrong but unreasonable. Given that the judge credited the testimony of Diamond's witnesses and discredited that of Backleaf's, the evidence shows that Backleaf threatened eviction and served Diamond with a notice to quit on a thoroughly unreasonable theory that even Backleaf in good faith could not have intended when the lease was negotiated. There was no contrary evidence showing any good faith by Backleaf. The position Backleaf assumed was extortionate in intent and effect, and given those circumstances, it was clearly erroneous for the judge to find no bad faith by Backleaf. Had the judge found Backleaf's testimony to be compelling and credible, we would defer to her factual conclusion that it acted in good faith. See *Anthony's Pier Four, Inc.,* 411 Mass. at 474-475. As matter of law, Backleaf's conduct amounts to a wilful and knowing unfair practice in violation of G. L. c. 93A.

That portion of the final judgment dismissing Diamond's G. L. c. 93A claim is reversed. In all other respects, the judgment is affirmed.

With regard to the order on Diamond's motion to amend the findings and to alter or amend the judgment, that portion of the order denying Diamond's motion to amend with respect to its G. L. c. 93A claim is reversed. In all other respects, the order is affirmed.

The case is remanded to the Superior Court for an assessment of damages consistent with this opinion.

*So ordered.*