LOUISE CAROLINE NURSING HOME, INC. *vs.* DIX
CONSTRUCTION CORP. & another.

Suffolk.    May 1, 1972. — July 13, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Civil,* Auditor: findings, objections to report.   *Witness,*
Expert witness. *Damages,* Building contract.

In an action heard by an auditor whose findings were final, objections
to the failure of the auditor to make certain findings of fact had
no standing except as the foundation for a motion to recommit.
[308]
An auditor has broad discretion to determine whether an expert wit-
ness has a proper factual basis to render an opinion. [308–309]
The measure of damages for a builder's failure to complete a con-
struction contract is the amount of the reasonable cost of com-
pleting the contract less such part of the contract price as has
not been paid; the measure is not the difference between the
structure's value, if properly completed, and its value as un-
finished. [309–311]
In an action based on failure of a builder to complete a construction
contract, the plaintiff suffered no "compensable damages" where it
appeared that the cost of completing the contract through another
builder was less than an unpaid part of the contract price. [309–311]

CONTRACT.   Writ in the Superior Court dated June 12,
1967.

The action was heard by *Kalus,* J., on an auditor's
report.

*Joel Z. Eigerman* for the plaintiff.

*Paul V. Power* (*Joseph P. Rooney* with him) for Re-
liance Insurance Company.

QUIRICO, J.   This is an action of contract in which
Louise Caroline Nursing Home, Inc. (Nursing Home)
seeks damages from Dix Construction Corp. (Dix) for
breach of a contract to build a nursing home, and from
Reliance Insurance Company (Reliance), for its default
on a surety bond guaranteeing performance by Dix.   Dix
filed no answer, was defaulted, and did not participate in

the litigation.  Reliance filed an answer and defended in its own behalf.[1]

The case was referred to an auditor for hearing pursuant to a stipulation of the parties that his findings of fact would be final.[2]  After hearing the parties, the auditor filed a report in which he found generally: (1) that the Nursing Home had fulfilled all of its contractual obligations to Dix; (2) that Dix had committed a breach of its contractual obligations to the Nursing Home by failing, without justification, to complete the contract within the time agreed; and (3) that Reliance committed a breach of its obligations as surety by failing to take any action when Dix defaulted.  However, he further found that the Nursing Home "suffered no compensable damages as a result of the breach by Dix . . . and the breach by Reliance . . . in that the cost to complete the nursing home . . . was within the contract price . . . less what had been paid to Dix . . . ."

The Nursing Home filed a number of objections to the auditor's report and requested, pursuant to Rule 90 of the Superior Court (1954), that the auditor file a brief summary of the evidence relating to each such objection. After the auditor filed such a summary, the Nursing Home filed a motion to recommit the case to the auditor for correction of alleged errors.  Reliance filed a cross motion asking (a) that the Nursing Home's objections

[1] The City Bank and Trust Company, the first mortgagee of the nursing home property, was originally a plaintiff in this action seeking recovery from Reliance on the surety bond of which the bank was an obligee.  During the hearings before the auditor counsel agreed that the bank is seeking no damages in this action.  We treat this as tantamount to a discontinuance by the bank.  This was probably due to the fact that the bank foreclosed its mortgage and the proceeds of the foreclosure sale were sufficient to pay what was due it at that time.  Several months before this action was started, a court of this Commonwealth appointed a receiver for Dix.  Although Dix seasonably filed a suggestion of that fact in this case with a request that the receiver be substituted for it, no action appears to have been taken on the request.  A third party action brought by Reliance against several officers of Dix was severed from this case before the hearing and is not before us.

[2] A companion case brought by Dix against the Nursing Home was also referred to the same auditor for hearing with the present case, but it was discontinued at some unspecified time before the auditor filed his report.

to the report be overruled and (b) that judgment be entered in its favor on the report. The judge denied the motion of the Nursing Home and allowed that of Reliance. The case is before us on the Nursing Home's exceptions to those rulings which in turn involve its objections to the auditor's report.

1. The Nursing Home objected to the auditor's failure to grant four of its requests for findings. Although we could properly refuse to consider this objection because it was not argued in the Nursing Home's brief, it is sufficient to say that requests to an auditor to make findings of fact have no standing, without more, as the basis for objections, although they may be part of the foundation for a motion to recommit. *Greenhood* v. *Richardson,* 226 Mass. 208, 209–210, and cases cited. *Staples Coal Co.* v. *Ucello,* 333 Mass. 464, 466.

2. The Nursing Home objects to the auditor's action in striking the testimony of one Goggin offered by it as an expert witness to establish (1) the value of the incomplete building when Dix ceased construction and (2) the projected value of the building when completed. With reference to Goggin's testimony the auditor stated in his report: "I am disregarding this opinion evidence of Goggin and striking it out without regard to its relevancy. The principal reason for striking this testimony is that. the witness never stated any valid basis in fact for his opinions. Further, I have doubts about the witness's qualifications to give such testimony." [3]

---

[3] In his summary of the evidence relating to the objection on this point the auditor amplified his reasons for excluding Goggin's testimony. The summary states, in part: "The basis of Goggin's opinions with reference to the value of the nursing home at different times was a rule of thumb or practice of appraisal by which a purchaser of a nursing home determined the value of such nursing home. He also testified there was a per bed valuation put on a building and this sometimes was regardless of the cost of the building. When asked to clarify or explain the 'per-bed valuation,' the witness did state that it (the valuation) varied with the type of construction, that at that time the state came out with rules and so did the Government that it was Class 1, 2, 3, 4, 5 construction, that the per bed cost would be formulated or based on the type of construction, . . . the area in which it was located, the land area, the surrounding scene and the environment. He further testified that all of these things had a

A judge, or an auditor or master designated by a judge to hear a matter, has broad discretion to determine whether an expert witness has a proper basis, in terms of adequate information and preparation, to render an opinion on the matter in dispute. See *State Tax Commn. v. Assessors of Springfield*, 331 Mass. 677, 684–685; *H. H. Hawkins & Sons Co. v. Robie*, 338 Mass. 61, 65. The auditor's exclusion of Goggin's testimony for the reasons set forth in his report and in his summary of evidence under Superior Court Rule 90 was a proper exercise of his discretion and was not error.

The auditor's observation that he had doubts about Goggin's qualifications affords an additional ground for the exclusion of his testimony. We have often stated that "[w]hether a witness who is called as an expert has the requisite qualifications and knowledge to enable him to testify, is a preliminary question for the court. The decision of this question is conclusive, unless it appears upon the evidence to have been erroneous, or to have been founded upon some error in law." *Perkins v. Stickney*, 132 Mass. 217, 218, and cases cited. No such error appearing on the record, Goggin's testimony was also properly excluded on this ground.

3. Two of the Nursing Home's objections relate to the measure of the damages applied by the auditor in reaching his conclusion that it suffered no "compensable damages." The rule of damages applied by the auditor was that if the cost of completing the contract by the use of a substitute contractor is within the contract price, less what had already been paid on the contract, no "compensable damages" have occurred. The Nursing Home argues that the proper rule of damages would entitle it to the difference between the value of the building as left by Dix and the value it would have had if the contract had been fully performed. Under this rule the Nursing

---

bearing, and that each and every nursing home was considered in all the lights of these various aspects of an appraisal and that he approached this nursing home in this manner. The witness did not state the particular or specific facts on which his opinions were based."

Home contends that it was entitled to the "benefits of its bargain," meaning that if the fair market value of the completed building would have exceeded the contractual cost of construction, recovery should be allowed for this lost extra value. It bases this argument primarily upon our statement in *Province Sec. Corp.* v. *Maryland Cas. Co.* 269 Mass. 75, 94, that "[i]t is a settled rule that the measure of damages where a contractor has failed to perform a contract for the construction of a building for business uses is the difference between the value of the building as left by the contractor and its value had it been finished according to contract. In other words the question is how much less was the building worth than it would have been worth if the contract had been fully performed. *Powell* v. *Howard,* 109 Mass. 192. *White* v. *McLaren,* 151 Mass. 553. *Norcross Brothers Co.* v. *Vose,* 199 Mass. 81, 95, 96. *Pelatowski* v. *Black,* 213 Mass. 428." This statement was probably not necessary to the court's decision in the *Province Sec. Corp.* case and, in any event, must be read in light of the cases cited by the court in support of it. All of these cases involved failure of performance in the sense of defective performance, as contrasted with abandonment of performance. In one of the cases, *Pelatowski* v. *Black,* 213 Mass. 428, 431, the court expressly distinguished "cases where a contractor has abandoned his work while yet unfinished."

The fundamental rule of damages applied in all contract cases was stated by this court in *Ficara* v. *Belleau,* 331 Mass. 80, 82, in the following language: "It is not the policy of our law to award damages which would put a plaintiff in a better position than if the defendant had carried out his contract. *Magnolia Metal Co.* v. *Gale,* 189 Mass. 124, 132–133. *Snelling* v. *Dine,* 270 Mass. 501, 506. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 54. *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176, 185–186. 'The fundamental principle upon which the rule of damages is based is compensation. . . . Compensation is the value of the performance of the contract, that is, what the plaintiff would have made had the con-

tract been performed.' *F. A. Bartlett Tree Expert Co.*
v. *Hartney,* 308 Mass. 407, 412. . . . The plaintiff is
entitled to be made whole and no more."

Consonant with this principle we have held that in
assessing damages for failure to complete a construc-
tion contract, "[t]he measure of the plaintiffs' damages
(at least in the absence of other elements of damage, as,
for example, for delay in construction, which the master
has not found here) can be only in the amount of the
reasonable cost of completing the contract and repairing
the defendant's defective performance less such part of
the contract price as has not been paid." *DiMare* v.
*Capaldi,* 336 Mass. 497, 502. This principle was re-
cently reiterated in *Providence Washington Ins. Co.* v.
*Beck,* 356 Mass. 739.[4] In the face of this principle the
Nursing Home's arguments attempting to demonstrate
the amount of alleged "benefits of its bargain" lost are
to no avail. In any event, it should be noted that any
such "benefits of its bargain" as would derive from ob-
taining a building worth much more than the actual costs
of construction are preserved if the building can be com-
pleted at a total cost which is still within the contract
price, less any amount which has already been paid on
the contract. The auditor was correct in applying the
"cost of completion" measure of damages which ex-
cluded any separate recovery for lost "benefits of its
bargain."

The Nursing Home additionally contends that even
under the rule of damages applied by the auditor they
were entitled, in the words of the *DiMare* case, *supra,* to
recover "other elements of damage, as, for example, for
delay in construction." 336 Mass. at 502. The short
answer to this contention is the auditor's express state-

---

[4] In the earlier case of *Pelatowski* v. *Black,* 213 Mass. 428, 431,
the court had suggested that "[i]n such cases the measure of dam-
ages to be recovered or recouped well might be the reasonable cost
of completing the work." However, this observation was subsequently
disapproved in *Ficara* v. *Belleau,* 331 Mass. 80, 82, because it in-
cluded no provision for the deduction of 'such part of the contract
price as has not been paid and is not still payable . . ..'" 331 Mass.
at 81 (quoting from Restatement: Contracts, § 346 [1]).

ment, in his summary of the evidence, that "[t]here was no specific evidence as to the costs of delay, if any."

The Nursing Home also argues that it is entitled to recover such additional interest as it was required to pay as a result of the default by Reliance and the breach of contract by Dix. This argument is based on the auditor's findings and summary of evidence that the interest rate on the $400,000 construction loan was to be one per cent per month "commencing with the date of maturity," and that the total interest paid, including all discounted interest, was $120,094.76.[5] There was no evidence or finding, however, as to the rate of interest paid prior to maturity or as to the amount of alleged excess interest attributable to the defendants' defaults. The Nursing Home simply has not sustained its burden of proof on this point.

4. For the foregoing reasons the Nursing Home's exceptions to the denial of its motion to recommit the auditor's report and to the granting of Reliance's motion for entry of judgment in accordance with the auditor's report must be overruled.

*Exceptions overruled.*

---

[5] There is an aura of mystery about this interest figure of $120,094.76. The auditor's report states that this is "[t]he total amount of interest paid by . . . [the Nursing Home] to" the bank under the construction loan agreement. The manner in which it is computed is not disclosed. When the bank foreclosed its mortgage on February 2, 1967, it had advanced a total of $230,905.24 for periodic payments to Dix as construction of the building progressed. The foreclosure sale price was $351,000 which, by coincidence or otherwise, happens to be exactly $120,094.76 above the principal balance due on the mortgage. This figure of $120,094.76 appears to be a computation of interest at the rate of one per cent per month, or twelve per cent per year, on $400,000 for the two years, six months and nine days between July 24, 1964, when the bank agreed to loan that amount, and February 2, 1967, when it foreclosed its mortgage. Of course, the bank never advanced more than $230,905.24 of the $400,000 face amount of the mortgage. Even if we were to assume, contrary to fact, that the sum of $230,905.24 had been advanced on July 24, 1964, it would require an interest rate in excess of twenty per cent per annum to accumulate interest of $120,094.76 by February 2, 1967. A careful reading of the record sheds no light on this issue on which the Nursing Home had the burden of proof.