TORRUELLA, District Judge.
 

 This is a direct appeal by defendants New Bedford Redevelopment Authority and the City of New Bedford (hereinafter “Authority”) from findings of fact, rulings of law and denial of a motion for a new trial made by the United States Bankruptcy Court for the District of Massachusetts.
 
 [1]
 
 At issue in this action is the performance of Contract No. 5 of the South Terminal Urban Renewal Project, a contract awarded by the Authority to plaintiff-appellee D. Federico Company, Inc. (hereinafter “Federico”' or “the Contractor”) for the construction of
 
 *125
 
 two earth-filled bulkhead piers known as Homer’s Wharf and Leonard’s Wharf.
 

 The controversy primarily arose from extensive, extra work made necessary by an inadequate description of the material to be excavated in the preparation of the work site. The Authority maintained that its notice was adequate and that it advised the bidders to carefully examine the area for themselves in order to determine the extent of the work to be done. Federico argued that since the Authority had in its possession a detailed engineering report describing the obstructions which were eventually encountered, it misled the contractors by its failure to inform them of the existence of the report or to include in the description information summarized from the report.
 

 From this core controversy flowed thirteen issues in the complaint, various counterclaims, and two
 
 [2]
 
 well reasoned, carefully detailed and documented opinions handed down by the bankruptcy court. The court found that the contractor was less than prudent in his cursory examination of the work site and that there was no breach of warranty or misrepresentation. It also found that the Authority had important information which it did not convey to bidders, that this information would have greatly assisted bidders in the preparation of their bids and that its notification could have been easily accomplished. Under these circumstances, the court held that the Authority should not expect to receive the benefit of this substantial additional work without compensation to the performing party merely because the contractor was less than conscientious in discovering the undisclosed problem. Citing
 
 Bloomgarden v. Coyer,
 
 479 F.2d 201 (D.C.Cir.1973), the Judge imposed compensation based on the theory of unjust enrichment. Because of Federico’s own imprudence, the Judge also held that equity required the contractor to absorb all expenses that would have been avoidable had it been conscientious in the inspection made prior to bidding on the contract. These findings set the tone for the rest of the trial court’s decision.
 

 The Authority immediately contested the trial court’s application of the equitable theory of unjust enrichment to an action at law. Appellant cites
 
 Spector v. Loreck,
 
 342 Mass. 685, 175 N.E.2d 262, 264 (1961), among others, to support its contention that where there is an adequate remedy at law, the plaintiff and the court cannot resort to equity. Appellant points out in its brief that the court found that the Authority did not breach any warranty or contract. While it mentions the contractor’s failure to perform an adequate on-site investigation as required by the bid documents, the Authority neglects to mention its own imprudence in failing to include important, relevant information in said documents. When the government agency is in possession of information pertinent to construction work to be performed under a contract, there is a duty to fully disclose and furnish to the contractor the facts of which the agency has knowledge.
 
 Wm. A. Smith Contracting Co. v. United States,
 
 412 F.2d 1325, 1338, 188 Ct.Cl. 1062 (1969);
 
 Leal v. United States,
 
 276 F.2d 378, 383, 149 Ct.Cl. 451 (1960). See also
 
 Hardeman-Monier-Hutcherson
 
 v.
 
 United States,
 
 458 F.2d 1364, 198 Ct.Cl. 472 (1972). Appellant possessed the Goodkind & O’Dea Engineering Report which would have alerted Federico to the probable presence of concrete piles and to the fact that this excavation was anomalous in comparison to others he had done in the area. It would have made him aware of the need for a more careful inspection of the area.
 

 “In the event of failure to disclose available information which has the effect of misleading a government contractor with respect to conditions existing in the construction area, the contractor is entitled to
 
 equitable adjustment
 
 under the
 
 *126
 
 ‘changed conditions’ clause of the construction contract.”
 
 [3]
 

 (emphasis supplied).
 

 Wm. Smith, supra,
 
 412 F.2d at 1338.
 

 Although Federico did not specifically plead the theory of unjust enrichment, Federal Rule of Civil Procedure 15(b), incorporated by reference into Rule 715 of the Rules of Bankruptcy Procedure, provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Rule 15(b) has rejected any concept that such amendments to conform with the evidence are barred if they result in a change of the Plaintiff’s cause of action. The fact that it involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting its ease.
 
 See
 
 3 Moore’s
 
 Federal Practice
 
 § 51.13 (2d ed. 1976).
 

 Likewise, Bankruptcy Rule 754 indicates that Fed.R.Civ.P. 54(c) applies in related adversary proceedings and it permits the trial court to grant relief to which a prevailing party is entitled even though unrequested in the pleadings.
 
 United Roasters, Inc. v. Colgate-Palmolive Co.,
 
 649 F.2d 985 (4th Cir.1981),
 
 cert. denied,
 
 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590.
 
 See also Consove v. Cohen (In re Roco Corp.),
 
 701 F.2d 978 (1st Cir.1983).
 

 Of the fifteen remaining issues on appeal, many of them either turn upon facts of the case or are based upon the argument that the evidence in the record is insufficient to support the trial court’s findings of fact. In reviewing the decision of a court sitting without jury the test is not whether there can be found “substantial evidence” supporting the conclusion.
 
 Burgess
 
 v.
 
 M/V Tamano,
 
 564 F.2d 964, 976 (1st Cir.1977),
 
 cert. denied,
 
 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537;
 
 Case v. Morrisette,
 
 475 F.2d 1300, 1307 n. 35 (D.C.Cir.1973). Rather, the question is whether on the record as a whole the appellate court views the conclusion as clearly erroneous,
 
 viz.,
 
 “when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.”
 
 Burgess, supra,
 
 at 977;
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 68 S.Ct.
 
 *127
 
 525, 92 L.Ed. 746 (1948). Rule 16 of the First Circuit Rules Governing Appeals from Bankruptcy Judges to District Courts, Appellate Panels and Court of Appeals, (effective March 1, 1980), clearly supports this standard of review: The appellate court shall accept the bankruptcy judge’s findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the bankruptcy judge to pass upon the credibility of witnesses.
 

 In reviewing the lower court’s findings, we must presume regularity and give due regard to the trial judge’s proximity to the situation.
 
 Berrios Rivera v. British Ropes, Ltd.,
 
 575 F.2d 966, 969 (1st Cir.1978).
 

 The Authority argues that Federico failed to follow the contract provisions as they pertain to extra work, and is, therefore, precluded from recovery. The Authority bases this alleged error on the incorrect assumption that the Trial Court found Federico had failed to adhere to the contractual or statutory procedures. No such finding was made in either of the opinions. Section 110 of the contract and Mass.Gen. Laws ch. 30, § 39N require that the contractor give notice in writing as soon as possible after the discovery of subsurface physical conditions substantially or materially different from those in the document.
 

 The record shows that the underwater obstructions were encountered at Homer’s Wharf in September 1975, at which time the contractor notified the engineers employed by the Authority. From that time until June, 1976, both parties were in constant communication in an effort to determine the exact identity, location, and character of the obstructions. Minutes of Authority meetings during this period admitted as evidence reflect its awareness of the problem and its involvement in discussions on the subject. As soon as Federico determined the exact character of the obstructions, it filed a written notice that the problem was beyond the scope of anticipated conditions and further requested instructions on how to proceed. Federico’s notice to the Authority cannot be character-ized as inadequate, so recovery is not precluded on this basis.
 

 According to the Appellant, the Court erred in finding substantial completion. Under Mass.Gen.Laws ch. 30, § 39G, substantial completion shall mean “either that the work required by the contract has been completed except for work having a contract price of less than one per cent of the then adjusted total contract price, or substantially all of the work has been completed and open to public use except for minor incomplete or unsatisfactory work items that do not materially impair the usefulness of the work required by the contract.”
 

 Testimony received from the Authority’s own engineers verified that Federico completed its work on the project by December, 1978. The Authority’s own project report dated December 4, 1978 revealed that the project would be 100% complete pending removal of material in front of an outfall sewer. Of four items asserted by the Authority as remaining to be performed as of December 12, 1978, one was withdrawn by counsel at trial. Testimony reveals that another item was in fact performed and that the third item actually concerned an insurance claim covered by the contract. Only one item, coating of bolts with epoxy, remained to be done, according to the testimony of the Authority’s engineer, Mr. Noyer. The court found the value of this work to be $13,039.69. On a contract of over $3,700,715.00, the amount originally bid before the unexpected costs were adjusted, the value of the work outstanding is much less than 1% of the total cost. With the value of the completed work at over 99% of the contract price, by the statutory definition, the Court’s finding of substantial completion was not in error.
 

 The Authority contests that the evidence in the record is insufficient to support the trial court’s finding that Federico is entitled to be paid the contract price for the maintenance and protection of pedestrian and vehicular traffic (“MTP”) during the reconstruction of the piers. Appellant’s brief would have us believe that this line item of work, No. 34, for which $140,000 was bid,
 
 *128
 
 was agreed to be done gratuitously. Closely enmeshed with this issue is a challenge to the finding by the Court, in footnote 6 of the opinion on liability, that the price of steel exceeded the original bid price for foreign steel by more than $140,000. Testimony in the record reveals the following:
 

 Although Federico’s total bid for the contract was the lowest, it still greatly exceeded the price anticipated by the Authority. Before the contract was finally signed, Federico, the Authority and its designers discussed possible ways of reducing the cost of the project.
 

 One way decided upon to reduce costs was to use domestic steel which at that moment was less expensive than the foreign steel price quoted by Federico in his bid. The price of the domestic steel, which was not guaranteed, plus the cost of transporting it to the work site would be $140,-000 less than the guaranteed price of the foreign steel. In order to avoid following the procedure required to amend the contract, and to simultaneously protect Federico from having to bear the risk of future price increases in domestic steel, the parties reached an oral agreement: Federico would buy its steel from U.S. Steel and the savings realized would cover the cost of MTP. If the price of U.S. Steel did not increase, payment for the MTP line item would be waived.
 
 [4]
 

 The trial court judge concluded that both parties entered this “understanding” and chose to ignore the proper procedure because otherwise these substantial changes would have required a new bid under state statute. Citing
 
 Datatrol, Inc. v. State Purchasing Agent,
 
 379 Mass. 679, 400 N.E.2d 1218, 1228 (1980), and a line of cases that discuss the importance of strict and undeviating compliance with public competitive bidding statutes, the court held that the contract as it relates to these two areas should be enforced as written. The line of reasoning proposed by the judge indicates that this decision was based on the invalidity of the oral waiver, the product of an improper shortcut. We, therefore, believe the trial court’s finding as to the price of steel is
 
 dicta.
 
 While it indicates to the parties that the outcome relative to the oral agreement would have been the same had the court enforced it, it is not necessary to, nor considered in, the judge’s decision. At most, it is a harmless error.
 

 Because we are upholding the trial court’s treatment of the MTP price of steel oral waiver, appellant urges that we void all other oral changes made by the parties to the contract. The difficulty with this argument is that nowhere in the record does there appear any reference to a controversy over other oral waivers and/or deletions of line items. We will not ordinarily consider on appeal an issue not urged upon or considered by the trial court.
 
 Furtado v. Bishop,
 
 604 F.2d 80, 87 (1st Cir.1979),
 
 cert. denied,
 
 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672;
 
 Johnston v. Holiday Inns, Inc.,
 
 595 F.2d 890, 894 (1st Cir.1979);
 
 Dobb v. Baker,
 
 505 F.2d 1041, 1044 (1st Cir.1974). We see no reason for doing so in this case.
 

 The Appellant, in another issue, contests the court’s calculation of 111 days of excusable delay for Federico’s having to remove 57,000 cubic yards more of underwater material than was initially anticipated. The bid documents, at Line item No. 47, estimated that 3,000 cubic yards of underwater material would be removed. The evidence showed that the quantity ultimately removed was 61,398 cubic yards, more than 20 times what was originally anticipated. The original contract comple
 
 *129
 
 tion date was extended from November 24, 1975 to October 30, 1976. The Authority argues that because the record shows that by this extended date 48,588 of the approximately 57,000 cubic yards in excess had already been excavated, the most that can be allowed for excusable delay is the time needed to excavate the remaining 8,412 cubic yards. Counsel’s reasoning is not logical, however. He has not considered in his calculation those tasks entailed in the reconstruction which could not be done until the excavation was completed. One must include this post excavation work which was not accomplished by the October 30th deadline, due to the extensive unanticipated excavation performed before that date. The trial court has minutely detailed its calculation and carefully excluded as unex-cusable that delay which it determined to already be covered by the extension of the deadline. We believe its findings are justified.
 

 The Authority also challenges the court’s allowance of 45 days of excusable delay for problems encountered in the driving of steel sheeting. The contract specification required that the contractor obtain the services of a diver to inspect the area immediately prior to pile driving. Testimony by Federico’s witness, Mr. Capocefelo, attempts to justify its failure to do so on the grounds that six years accumulation of silt would have rendered the obstructions invisible. According to the opinion,
 
 [5]
 
 Federico requested as much as six months excusable delay for this work, but the court found this figure inadequately supported by the evidence. Recognizing the difficulties caused by obstructions, and taking into consideration extra time required for removing and redriving the steel sheeting, the court allowed only 45 days. The record shows that the decision to continue driving once the obstructions were discovered was made jointly by Federico and the Authority’s engineers. In light of this, we find that the trial court’s evaluation is reasonable.
 

 The bankruptcy court further concluded that, as a matter of equity and in the context of this case where each party had acted imprudently, the appropriate measure of damages for removing the concrete piles and anything so entwined as to have become a part of the piles,
 
 [6]
 
 would be what a reasonable bidder would have bid on this item. The Authority now objects to this method for awarding damages.
 

 In attempting to resolve this issue, Judge Lavien, as he states in his opinion, first tried to use another standard. He found, however, that the bids solicited from the parties to determine the damages “reflected an air of complete unreality in either grandiose labor cadres or totally inadequate personnel. Each side in its cross-examination effectively demonstrated the lack of reality surrounding the estimates and the underlying concepts.” He therefore chose to use as a basis a term which could be more equitably determined, based upon the ample evidence presented in the trial. Where parties to a contract have not agreed to a term which is essential to the determination of their rights and duties, a term which is reasonable in the circumstances will be supplied by the court.
 
 Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority,
 
 7 Mass.App. 336, 387 N.E.2d 206, 210 (1979).
 
 Cf. Wes-Julian Construction Corporation
 
 v.
 
 Commonwealth,
 
 351 Mass. 588, 223 N.E.2d 72, 79 (1967). We also point out that the Authority’s counsel consented to the theory of a reasonable bid on a separate line item, as finally used by the trial court.
 
 [7]
 

 
 *130
 
 The rule is well recognized that an objection must be made in the trial court to reserve a question for review on appeal. A litigant may not, speculating on a verdict without making an objection, keep silent while matters are transpiring in the trial court and then put the trial judge in error by assigning error in the appellate court in respect of them, except, of course, in a case, which this is not, of plainly prejudicial error.
 
 Ford v. United Gas Corporation,
 
 254 F.2d 817 (5th Cir.1958),
 
 cert. denied,
 
 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958). This assignment of error is thus rejected.
 

 Another error alleged by the Appellant attacks Count III of Federico’s complaint as being defective and precluding final payment. The Authority complains that Federico claims substantial completion and not full performance. The general rule is that a party who has substantially complied with his contract is entitled to recover the contract price, with deductions for any defects or incompletions.
 
 Stanley Consultants, Inc. v. H. Kalicak Const. Co.,
 
 383 F.Supp. 315 (D.C.Mo.1974). We find that Rules 54(c) and 15(b), as previously discussed, are also applicable here. In addition, the award of $252,457.52 to Federico which the Authority would have us reverse was stipulated by the parties.
 
 [8]
 

 The Authority claims that the Court erred in denying its motion for new trial. An order denying a motion for a new trial is not open to review on appeal unless it appears that in denying the motion, the trial court abused its discretion.
 
 Nimrod v. Sylvester,
 
 369 F.2d 870, 873 (1st Cir.1966);
 
 Bunch v. United States,
 
 680 F.2d 1271, 1282 (9th Cir.1982). Authority’s counsel raises the issue of “new information” found in the transcript of a pre-trial conference held on April 21, 1981, a conference at which he was present, as the basis for his motion. Counsel still considered this evidence “new” enough to be brought in his motion filed twenty months later. To constitute newly discovered evidence for which a new trial may be granted under Rule 59, the evidence must not have been known to the movant at the time of the trial; moreover, this lack of knowledge must have been excusable.
 
 See
 
 6A Moore’s
 
 Federal Practice,
 
 § 59.08[3] (2d ed. 1976). We do not believe that information presented at a conference in which appellant’s attorney was a participant can qualify as newly discovered as previously defined. When counsel quotes himself as part of the passage cited in support of his motion, it is difficult to understand how such ignorance could be alleged to have been excusable. In denying a motion for a new trial, the judge said that this matter has been raised and ruled upon at least twice before; that matters in the transcript could hardly qualify as being newly discovered — that nothing presented required a new trial. Our perusal of the record leaves us with the same impression. We do not find an abuse of discretion by the lower court judge in denying appellant’s motion.
 

 The Authority claims that the proper measure of damages recoverable against the contractor for failure to install washers on bolts used in the steel sheeting of the piers is the reasonable cost of obtaining full performance. The bankruptcy court allowed damages for repairing the defective work. A review of the record shows expert testimony about the ways in which the missing washers could be placed on the bolts: Federico’s witness recommended a permanent approach which would retain the integrity of the pierj achieve the same effect as if the washers had originally been installed, and could be performed at a rea
 
 *131
 
 sonable cost. The Authority insists that the only adequate remedy would be to re-excavate the area, remove the bolts and then put the washers in place. To accomplish the task in the manner advanced by the Authority and, at the same time, avoid damage to the entire structure is tantamount to asking that the pier be re-excavated with a pick and shovel.
 

 For defective or unfinished construction, appellant can get judgment for “... (1) the reasonable cost of the construction and completion in accordance with the contract, if this is possible and
 
 does not involve unreasonable economic waste.” Ficara v. Belleau,
 
 331 Mass. 80, 117 N.E.2d 287 (1954) (emphasis supplied). See
 
 also Louise Carolina Nursing Home, Inc. v. Dix Construction Corp.,
 
 362 Mass. 306, 285 N.E.2d 904 (1972).
 

 We find that since both experts agreed upon the purpose of the washers, and since the process suggested by Federico’s witness would be 99% as effective as that proposed by the Authority, we must conclude that the trial court chose the correct basis on which to determine the cost of installing the washers.
 

 The appellant asks us to review the bankruptcy court’s denial of damages in Counts IV and VI through IX of its counterclaim. The court based its denial primarily on the issue of timeliness. In citing the contractual provision of the General Specifications, the court emphasized: Finding that the alleged problems were discovered a minimum of two years after the date of substantial completion,
 
 [10]
 
 the court barred this part of the action.
 
 [11]
 

 “... The Contractor shall promptly remedy any defects in the work and pay for any damage to other work resulting therefrom
 
 which shall appear within a period of 12 months from the date of final acceptance of the work. The Local Public Agency will give notice of defective materials and work with reasonable
 
 promptness.”
 
 [9]
 

 Appellant argues that the guaranty clause binds Federico contractually to repair any defects brought to his attention within the twelve month period; that it does not say that the plaintiff is absolved from legal action during the six year statute of limitations. We agree. However, the Authority did
 
 not
 
 notify Federico of the existence of the defects within the twelvemonth period. Having failed to perform a final inspection that would have revealed the patent defects of which they now complain, the Authority cannot maintain that it gave the contractor the reasonable notice required by the Guaranty Clause. Cf.
 
 Point Adams Packing Co. v. Astoria Marine Construction Co.,
 
 594 F.2d 763 (9th Cir.1979). Likewise, having accidentally discovered further damage nearly two years later, the Authority does not, as it cannot, allege that this damage specifically occurred within the twelve-month warranty. Federico was not an unlimited guarantor of all potential and future problems. All things must come to a reasonable end and that is what is contemplated by Mass.Gen.Laws ch. 30, § 39G.
 
 In Re D. Federico Co.,
 
 8 B.R. 888, 901 (Bkrtcy.D.Mass.1981).
 

 Insofar as the counterclaims dealt with failure to perform, we believe that the trial court has allowed the appropriate damages.
 

 Issue is taken by the Appellant for the bankruptcy court’s allowance of recovery on the contract for MTP. Quoting out of context of the liability opinion, the Authority’s counsel emphasizes the phrase “would not have been substantial”, in an effort to rehash the already tired issue of substantial completion versus full performance. In its context, we believe that the judge was referring to the
 
 magnitude
 
 of MTP in light of
 
 *132
 
 the whole project, not to the quantity of work yet to be performed on that item. As evidenced in the bid documents, and pointed out in the opinion, this was a
 
 lump sum item.
 
 That is, payment was not based on a price per unit performed. Rather, the price was quoted as a whole, regardless of how much work and/or cost was finally invested by the contractor in the performance of that item. That the original MTP was performed is not challenged. The judge has included a 40% mark up for indirect costs in calculating the damages for the various remedial tasks to be done, e.g. placing patches over the bold holes and installing the four inch square washers. Any additional cost for MTP during the remedial work has no doubt been taken into account on that mark-up. We, therefore, agree with the trial court that, having performed accordingly the MTP, Federico must be paid the contract price for that item.
 

 For more than two years the bankruptcy court has had an intimate working knowledge of the complicated matters involved in this action. It has carefully explained its reasoning and has provided substantial foundation for its findings and rulings. We believe that its decisions accurately reflect the record as a whole. They are, therefore, AFFIRMED.
 

 [1]
 

 . In light of the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Authority has challenged the jurisdiction of the bankruptcy court to hear this case. It suffices to say that final judgment herein was entered on December 13, 1982, eleven days prior to the date on which the Marathon decision became effective.
 

 [2]
 

 . By agreement, the trial was bifurcated. The court issued its opinion on liability in December, 1981, 16 B.R. 282. Findings and Rulings on Damages were handed down on November 23, 1982, 25 B.R. 822.
 

 [3]
 

 . The bid documents contain the following:
 

 “110. CLAIMS FOR EXTRA COST
 

 c. Any discrepancies which may be discovered between actual conditions and those represented by the Drawings and Maps shall at once be reported...
 

 d. If on the basis of the available evidence the Local Public Agency, determines that an adjustment of the Contract price and/or Time is justified, the procedure shall then be as provided in Section—CHANGES IN THE WORK under GENERAL CONDITIONS, PART 1.” Mass.Gen.Laws ch. 30 in its relevant part states:
 

 “§ 39N. Construction contracts; equitable adjustment in contract price for differing subsurface or latent physical conditions Every contract ... shall contain the following paragraph in its entirety and an awarding authority may adopt reasonable rules or regulations in conformity with that paragraph concerning the filing, investigation and settlement of such claims:
 

 If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly.”
 

 [4]
 

 . Appellant’s counsel argues in his brief that payment of MTP (Line item # 34) was waived, that there was no inter-relationship between that and the price of steel. We refer him to the testimony at Tr. 1-62:
 

 “MR. CAPOCEFELO:
 

 “U.S. Steel was not F.O.B. the job site. It was F.O.B. the mill. They did not include delivered price... I told the Authority I would give them a $140,000 credit ... and the $140,000 credit that we carried in the item of traffic and protection... So it was decided that rather than write a lengthy change order ... we would eliminate this item
 
 ... we would perform it, but we would not get paid for it because the savings in steel would be transferred into maintenance and protection of traffic.
 
 (Emphasis supplied).
 

 [5]
 

 . The record on appeal does not contain these excerpts from the transcript.
 

 [6]
 

 . It was the unanticipated discovery of these pilings, some weighing up to six tons, among the underwater material that caused the core controversy and most of the problems that followed. The bid specifications listed silt, mud, grave, concrete, timber and miscellaneous as materials below the water line subject to removal.
 

 [7]
 

 .Transcript 14-111, lines 14-24, reveal:
 

 “The Court:
 

 Whatever, why isn’t the simplest way of handling that problem that is fair to both of you to, after all the evidence is in, have me decide what the fair value or price or cost
 
 *130
 
 would be for removing the Raymond Concrete pile and/or anything that was entangled with it, determine how many cubic yards of that I felt were removed, and multiply one rate by the other, and that would be the amount for that item?
 

 Mr. LeTorneau:
 

 I have no objections to that at all.”
 
 (Emphasis supplied).
 

 [8]
 

 . Transcript, at 10-4:
 

 “Mr. Kutchin:
 

 ... So that the total of the amounts, ... just these items, $252,457.32. My brother and I have agreed that
 
 these items were approved by the Authority and would be awarded to the contractor,
 
 and are being withheld by the Authority.” (emphasis supplied).
 

 [9]
 

 . Bid specifications Section 132.
 

 [10]
 

 . The record and appellant’s brief show that in January, 1981, a diver doing other work for the Authority noticed the defects and damages claimed.
 

 [11]
 

 . We support the trial court’s use of the date of substantial completion as the date from which the 12 month period begins to run. A public agency cannot thwart the policy of Mass.Gen.Laws ch. 30, § 39G by the simple expedient of failing to obtain, or withholding, a stamp of approval.
 
 D. Federico Co. v. New Bedford Redevelopment Authority,
 
 9 Mass. App. 141, 399 N.E.2d 1103, 1106 (1980).