**In re ARMORFLITE PRECISION, INC.**

Civ. No. 84–0373 P.

United States District Court,
D. Maine.

April 26, 1985.

Daniel Amory, Kathleen Barry, Drummond Woodsum Plimpton & MacMahon, Robert Checkoway, Portland, Me., for appellant.

Stanley Greenberg, Greenberg & Greenberg, Portland, Me., for appellee.

## ORDER DENYING MOTION TO AMEND AND APPEAL

GENE CARTER, District Judge.

This case is on appeal from a judgment of the bankruptcy court which denied, in major part, the request of Equilease Corporation under 15 U.S.C. § 503(b) for payment of administrative expenses relating to the use by debtor of lathes owned by Equilease. The trustee for the debtor, Armorflite Precision, Inc., has cross-appealed from the bankruptcy court's order allowing Equilease's claim for $2,170 in administrative expenses for one day's use of the lathes and for the layover time of the rigger who was to remove the lathes from debtor's premises. 43 B.R. 14 (Bkrtcy. 1984).

## I.

Before proceeding to the merits of the appeal the Court will deal with two preliminary matters raised by appellant. Follow-

ing the requirements of Bankruptcy Rule 8006, appellant filed in the bankruptcy court its designation of the documents to be included in the record on appeal. The trustee filed a motion to strike some of the designated documents, which was granted by the bankruptcy court. Equilease has now filed a motion in this Court to supplement the record on appeal and to amend the statement of issues on appeal. The Court will grant the motion to amend the issues on appeal but will deny the motion to supplement the record.

■ Equilease argues first that the bankruptcy court had no jurisdiction to entertain the motion to strike. Under section 158(c) of the Bankruptcy Amendments and Federal Judgship Act of 1984 "[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...." The Federal Rules of Appellate Procedure govern the taking of such appeals. Under Fed.R.App.P. 10(e), correction or modification of the record on appeal may be made by the district court, the court in which the record was made. Similarly, any modification of the record in bankruptcy appeals may be made by the bankruptcy court; thus the motion to strike was properly addressed to that court.

Equilease sought to include in the record what it terms judicial admissions of the debtor contained in the bankruptcy court's files. The bankruptcy court declined to include the materials, giving this explanation: "These documents were not brought to the court's attention by a motion to take judicial notice, or otherwise. The items were not considered by this court in writing its Memorandum Decision or entering its order now on appeal." Equilease now seeks to have this Court amend the record to include some of the items stricken by the bankruptcy court. It argues that the bankruptcy court erred in not taking judicial notice of the Financial Statement of the Debtor which was contained in that court's files. Also in its motion to amend it urges

this Court to take judicial notice of other "judicial admissions" of the debtor. The Court will deal with the judicial notice issue first.

■ Counsel for Equilease represents in his brief that "the debtor's answer to question 13 in its Statement of Financial Affairs, filed in the bankruptcy court on May 13, 1982, listed the following lease payments: [six dates with corresponding dollar amounts]." He argues that the bankruptcy court should have taken judicial notice of this statement because it had been noted in Equilease's reply memorandum following the trial in the bankruptcy court. Federal Rule of Evidence 201 provides that a court must take judicial notice "if requested by a party and provided with the necessary information." Such notice is appropriate, however, only of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

■ The Court does not have before it the reply brief filed in the bankruptcy court which refers to the Financial Statement of the debtor. Although it appears unlikely that such a reference constitutes a request for judicial notice within the meaning of Rule 201, *see* C. Wright & K. Graham, 21 Federal Practice and Procedure § 5107, at 511, the record is inadequate to allow such a determination. The Court will not supplement the record in order to decide the issue, however, because the facts which Equilease seeks to have noticed are not an appropriate subject for judicial notice.

■ Although in certain circumstances a court's records are susceptible of judicial notice, that a fact sought to be noticed is found in a court's records is not talismanic. The fact still must be of the type described in Rule 201(b). Professors Wright and Graham warn that courts should be more careful than they usually are in judicially noticing their own records:

The third use of judicial notice of court records is the most questionable; taking judicial notice of extrajudicial facts that are related in official records. If it were permissible for a court to take judicial notice of a fact because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. If a party cannot be deprived of his right to dispute a fact by a judicial finding of its truth, a fortiori judicial notice cannot be taken of a fact because it is recited in affidavits, testimony, or documents filed in a court record. It is to be hoped that courts will be more careful than some of them have been in the past in the loose use of the doctrine of judicial notice for this purpose.

C. Wright and K. Graham, 21 Federal Practice and Procedure § 5106, at 142 (Supp. 1984).

■ In this case, the Court might have been able to take judicial notice of the fact that the debtor had made certain "admissions" in its personal financial statement. Equilease urges, however, that the substance of the statement should be noticed. If the substance of the statement had been admitted at trial, it might well have been the subject of dispute or explanation. Since the substance of the personal financial statement is not generally known within the Court's territorial district or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, it is not an appropriate subject for judicial notice. Thus, even if a request had been properly made, the bankruptcy court did not err in failing to take judicial notice of the financial statement of the debtor.

■ The Court will not supplement the record as requested by Equilease. The Court will review the decision of the bankruptcy court on the basis of the record which was before that court when it made its decision. The bankruptcy court has, with its granting of the motion to strike, determined the content of the record on which its decision is based. Equilease also seeks to put the memoranda it submitted to the bankruptcy court before this Court. The memoranda are not evidence, and statements of fact set out within them are not evidence. *In re Strubbe*, 347 F.2d 217, 218 (3d Cir.1965). Since they are not part of the evidentiary record that was before the bankruptcy court, and since they are not necessary to the Court's determination of the judicial notice issue, they will not be considered by this Court.

■ In its motion to amend the record, Equilease also seeks to have this Court take judicial notice of challenged documents 16, 17, 18, 20 and 21 which are described as documents in the bankruptcy court file "which contain judicial admissions by the debtor and the Trustee ... pertain[ing] to the debtor's acknowledgment of a debt ... to Equilease, ... and to the involvement of one Dsider Csonger in the affairs of the debtor and of the entity which transferred the lathes in question to the debtor Armorflite Southeast, Inc." Applying the same analysis employed in the above determination that the financial statement of the debtor was not a proper subject for judicial notice, the Court will not judicially notice these documents or amend the record. Equilease should have put all of these documents before the bankruptcy court as evidence so that appropriate findings could be made concerning their contents.

## II.

■ Appellant next argues that the bankruptcy court had no subject matter jurisdiction of this case prior to July 10, 1984; the Court cannot agree. Between December 24, 1982 and July 10, 1984 the bankruptcy court exercised jurisdiction over bankruptcy matters under Local Rule 41. Although this Court declared Local Rule 41 invalid in *In re South Portland Shipyard and Marine Railways, Inc.*, 32 B.R. 1012 (D.D.Me.1983), that decision was stayed pending appeal. Because the Court of Appeals vacated the judgment in *South Portland Shipyard, see Romeo J. Roy, Inc. v. Northern National Bank*, 740 F.2d 111 (1st Cir.1984), declining to address

the validity of Rule 41, this Court has stated that it will not inquire into the jurisdictional basis of proceedings before the bankruptcy court during the period of the stay of judgment in *South Portland Shipyard. In re Michael M. Brown,* Civ. No. 84–0058–P (D.Me. Feb. 14, 1985).

### III.

Appellant also disputes several of the findings of fact made by the bankruptcy court. In examining the record below, this Court will accept the findings of the bankruptcy court unless they are clearly erroneous. Bankr. Rule 8013; *see D. Federico Co., Inc. v. New Bedford Redevelopment Authority,* 723 F.2d 122, 126 (1st Cir.1983). The conclusion of the bankruptcy court will not be overturned unless the reviewing Court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Burgess v. M/V Tamano,* 564 F.2d 964, 977 (1st Cir.1977).

Section 503(b)(1)(A) provides for payment of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." In deciding whether appellant is entitled to payment by the trustee for the use of the lathes as an administrative expense under 11 U.S.C. § 503, the bankruptcy court applied a test developed by the First Circuit Court of Appeals under section 64(a)(1) of the Bankruptcy Act, the predecessor of section 503. In *In re Mammoth Mart,* 536 F.2d 950 (1st Cir.1976) the Court of Appeals examined the purpose of the priority now set forth in section 503.

"Since the debtor in possession is a separate legal entity that is carrying on the business principally for the benefit of the pre-filing creditors, the court has reasoned that fairness requires that any claims incident to the debtor in possession's operation of the business be paid before those creditors for whose benefit the continued operation of the business

was allowed. *See Reading Co. v. Brown,* [391 U.S. 471] at 478 [88 S.Ct. 1759 at 1763, 20 L.Ed.2d 751]."

Extrapolating from this purpose the Court of Appeals found that for a claim to be entitled to priority as an administrative expense it must (1) arise from a transaction with the debtor in possession, and (2) benefit the bankruptcy estate. *Id.* "When third parties are induced to supply goods or services to the debtor in possession pursuant to a contract that has not been rejected, the purposes of § 64(a)(1) plainly require that their claims be afforded priority." *Id.*

The bankruptcy court found that there was no contract, either express or implied, between appellant and the debtor in possession for use of the lathes and that Equilease had not been induced to supply them for the period between the filing of the petition and late August 1983.[1] Appellant concurs with the finding of no express contract but challenges the others.

The record shows that the lathes in question were leased by Armorflite Southeast [Southeast], a separate Florida corporation. They were sent, without appellant's consent, to the debtor's plant in the fall of 1980. The bankruptcy court found, and appellant disputes, that Southeast had supplied the consideration for the leases. Because Equilease threatened to replevy the lathes in a dispute over lease payments in the summer of 1981, negotiations ensued. The bankruptcy court found that Southeast made substantial payments on the leases in the wake of those negotiations. Appellant also disputes this finding, claiming that the August 1981 payments were made largely by the debtor. Southeast filed for bankruptcy early in 1982, and Equilease learned then what it may have known or suspected before—that its lathes were at debtor's plant in Maine. After Armorflite filed its separate petition in April 1982, Equilease filed a complaint for relief from stay in Maine in order to repossess the lathes. Armorflite informed Equilease that it wanted to keep the lathes and suggested that it

---

**1.** The period from late August 1983 on is discussed *infra.*

assume the Southeast leases. After negotiations, Equilease demanded both a formal assumption agreement and the personal guarantee of the president. There was, however, no execution of either document, and Armorflite did not make any payments pursuant to any such agreement.

Appellant argues that because Armorflite made lease payments and paid consideration for the leases, an implied contract was formed which gives rise to the debtor in possession's obligation, under *Mammoth Mart*, to pay for rental of the lathes as an administrative expense. The Court cannot agree with appellant's assertion that the record clearly shows payments by debtor for the lathes. Although the Cash Disbursement Journal of the Debtor, Exhibit 4, shows a payment to Equilease of $4,200 in January 1982, neither of the witnesses from Armorflite knew anything about it. Tr. 49, 98. The record does not show what the payments were for or the circumstances surrounding them. The other documents which appellant argues show payments to Equilease from Armorflite are ambiguous at best. In a memo to his file Equilease Vice President Gerald Carr stated that *Southeast's*, not Armorflite's, attorney "wanted to pay $8,000 down which we refused until the acceptance of the guarantor in lieu of the replevin of our equipment." Carr Deposition, Ex. 7. Carr refers to five "insufficient fund checks" sent by Armorflite in Maine during July and August 1981, but reports that Southeast's attorney was "frankly shocked that the Armorflite facility sent these checks." *Id.* Again the circumstances of the sending of the checks and their purpose is obscure. In a later letter, Southeast's attorney told Equilease that *Southeast's* president would guarantee the lease. The same letter cryptically stated: "In addition, the check that was promised in the amount of $8,000 additional payments will be made." [sic] Carr Deposition, Ex. 3. Although Carr acknowledged payment, he did not say from whom it came. Carr Tr. at 40. On this record, the bankruptcy court's findings that Southeast had paid the consideration for the leases

and made the August payment were not clearly erroneous. In fact, they seem by far the more sound of the various conclusions which may be drawn from the evidence presented. Therefore, Equilease's argument that an implied contract had arisen based on payments by Armorflite for the leases must fail.

Even if the evidence were to show that Armorflite made payments to Equilease on the leases, the bankruptcy court's finding of no implied contract is not clearly erroneous. Under Maine law when

"one renders services to another at the request, or with the knowledge and consent of the other, and the surrounding circumstances make it reasonable for him to believe that he will receive payment therefor from the other, and he does so believe, a promise to pay will be inferred and there is an implied contract."

*Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977) (quoting *Morrill v. United States,* 228 F.Supp. 734 (D.Me.1964).

The circumstances surrounding the provision of services here did not make it reasonable for Equilease to think it would be paid by Armorflite. The record is not clear that Equilease even knew specifically that the lathes in question were at Armorflite in Maine until sometime in 1982. Carr Tr. 35–42. No payments were made on the leases after January 1982. Also no payment schedules or invoices were ever sent to Armorflite by Equilease. Carr Tr. 26. Moreover, it is clear, as the bankruptcy judge found, that Equilease could not have had a reasonable expectation of being paid because it refused to allow assumption of the leases without a formal assumption agreement and guarantee, neither of which was ever executed.

Since there was no express or implied contract between the parties giving rise to an inducement to Equilease by Armorflite to leave the lathes at Armorflite's plant in Maine, the first requirement of the *Mammoth Mart* test is not met. Therefore, the bankruptcy judge's decision to

disallow Equilease's request for the accelerated lease payments as an administrative expense is not clearly erroneous. Although Equilease claims that it is entitled to payment for the fair value of Armorflite's use of its equipment, it is clear that such a claim is not entitled to priority under section 503 unless it meets the requirements of *Mammoth Mart.*

### IV.

Armorflite converted its case to a chapter 7 liquidation in June 1983. Shortly thereafter, the trustee and Equilease's counsel negotiated repossession of the lathes for August 26, 1983. The repossession was renegotiated to take place on September 6, 1983 and the trustee paid $500 as a cost of administration for Armorflite's retention of the lathes for the extra week. When Equilease's rigger arrived to repossess the lathes, Armorflite employees refused to give them up until noon the next day. Disassembly was finished about 24 hours later. Equilease's claim for payment of administrative expenses included $2,070 for reimbursement of its rigger for its unexpected 18-hour layover caused by Armorflite's refusal to relinquish the lathes on time. The bankruptcy court held that this was an allowable administrative expense since the applicable statute has been construed as providing "general protection to claimants injured by the debtor in possession's operation of the business even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate." *Mammoth Mart,* 536 F.2d at 954. The bankruptcy court also awarded $100 for Armorflite's use of the lathes for an extra day. The $100 figure was a pro rata figure based on the $500 payment the trustee had made for the week's extension of the repossession.

The trustee has cross-appealed from the award of the $2,170 on the ground that Equilease voluntarily paid the riggers for time spent sleeping. The trustee contends that even if Equilease is entitled to some compensation for the delay, the sum should be much lower and should encompass only the working hours of the delay. In his deposition, Edward Ranieri, Equilease's Assistant Marketing Director, makes clear that Equilease pays for overnight layovers when they are unanticipated. Ranieri Deposition at 9. Plainly, this is not a situation in which the rigger knew of the layover well in advance; therefore, Equilease was expected to pay for the delay. *See, id.* Since the delay was caused by the conduct of debtor's business, the finding of the Court that it is chargeable as an administrative expense is not clearly erroneous. Given the $500 payment by the trustee for the week's delay in the repossession at Armorflite's behest, the attribution of $100 as an administrative expense for the extra day's delay occasioned by Armorflite's refusal to allow repossession is also reasonable and not clearly erroneous.

Accordingly, it is ORDERED that appellant's Motion to Supplement the Record on Appeal be, and is hereby, DENIED. It is FURTHER ORDERED that the decision of the bankruptcy court is AFFIRMED. The appeal of Equilease and the cross-appeal of the trustee are both DENIED.

So ORDERED.