362 So.2d 719 (1978)
TOWN OF LONGBOAT KEY, Florida, Appellant,
v.
CARL E. WIDELL & SON, Appellee.
No. 78-20.
District Court of Appeal of Florida, Second District.
September 27, 1978.
*720 I.W. Whitesell, Jr., of Wood, Whitesell & Karp, Sarasota, for appellant.
Andrew D. Owens, Jr. and G. Hunter Gibbons, of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellee.
DANAHY, Judge.
Appellant/defendant (the town) and appellee/plaintiff (the contractor) entered into a contract for the construction of a pumping station and a lift station as part of a central wastewater system for the town. After completion of construction and acceptance by the town, the contractor brought this suit to recover the balance due it under the contract plus costs incurred by the contractor over and above the contract price in constructing the lift station by the caisson method. The contractor claimed that the caisson method of construction, which does not require a dry excavation, was made necessary by the fact that the excavation at the construction site could not be kept dry by dewatering, as the contractor had anticipated in submitting its bid.
The town disputed the contractor's claim for the extra costs and asserted an offset for delay beyond the completion date specified in the contract, including extensions. The contract provided that the town was entitled to a credit in the amount of $150 per day for delay. The town claimed a delay of 98 days, resulting in an offset of $14,700. The contractor argued that the delay was for only 33 days, so that the proper credit was $4,950.
After a nonjury trial, the trial judge entered a final judgment in favor of the contractor for the balance due under the contract plus the extra cost of the caisson method of construction, less a credit to the town for the delay in the amount of $4,950.
*721 The town appeals from that part of the judgment which awards the extra costs and that part which allows a credit of $4,950 for delay. By cross-assignment of error, the contractor asserts that the trial judge erred in failing to award the contractor prejudgment interest on the sums found to be due the contractor, computed from the day that construction was completed.
We find no error in the final judgment except as to the matter of prejudgment interest. Therefore, we affirm in part and reverse in part, and remand with instructions to enter an amended final judgment awarding the contractor interest on the sums found to be due it, computed from July 4, 1975, thirty days following the date of acceptance by the town.
The contractor asserted that in making its bid, it relied upon a subsurface soil analysis and investigation prepared for the town by Ardaman & Associates, consulting engineers, which was included by the town in the bid packet. The contractor claimed that this report, which was based on test borings, showed that the excavations for both the pumping station and the lift station could be kept dry by using the well pump method for dewatering. The specifications called for dewatering by the well pump method. However, when the contractor began excavation for construction of the lift station, it encountered a water level which rose and fell with the tides. The contractor concluded that, therefore, it was not possible to dewater for construction by the dry method and suggested to the town's project engineer that construction be accomplished by the caisson method. The engineer redesigned the lift station for construction by the caisson method and submitted the new plans to the contractor. The contractor then proceeded with construction of the lift station by the caisson method and thereby incurred additional costs. The town refused payment.
The town first argues that the contractor was not justified in relying on the Ardaman report in basing its bid on the cost of construction by the dry method, on the assumption that the construction site could be dewatered. The trial judge must have come to a contrary conclusion, and we find no error in that regard since the evidence supports such a conclusion. The town next argues that, in any event, the contract provided that each bidder was held responsible for having examined the proposed construction site and for having satisfied himself as to conditions, including the nature of the ground water table conditions. The town asserts that, having failed to make test borings which would have revealed the water level conditions which the contractor encountered, the contractor "assumed the risk" of those conditions which he actually found. The contractor counters that the test borings would have been very expensive and, furthermore, only actual excavation would have revealed the water level conditions which were found. Whether or not these contentions by the contractor are justified by the record in this case, we hold that, for reasons hereinafter expressed, the contractor's recovery is not precluded by its failure to make test borings at the construction site.
The town argues that this case is on all fours with Bumby & Stimpson, Inc. v. Peninsula Utilities Corp., 169 So.2d 499 (Fla. 3d DCA 1964), which involved a contract between private parties for the laying of pipe in the construction of a sewage collection system. The contractor's bid contemplated the use of clay pipe. Because of the existence of soft sand, the contractor found he could not use clay pipe but was required to use more expensive cast iron pipe. The court pointed out that the contractor had failed to make tests which would have revealed the existence of soft sand, and held that the contractor was not entitled to recover the additional costs.
Whether or not we agree with the result reached in the Bumby case, we find that decision clearly distinguishable because it involved a different factual situation and because it did not involve a contract with a governmental unit having a provision peculiar to public works contracts. That provision, as it appears in the contract involved in this case, is as follows:

*722 During the progress of the work, should a contractor encounter, or the engineer or owner discover, subsurface or latent conditions at the site differing materially from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the drawings and specifications, the engineer's attention shall be called immediately to such conditions before they are disturbed. The engineer will thereupon promptly investigate the conditions, and if he finds that they do materially differ, with the written approval of the owner, the contract will be modified to provide for the increase or decrease of costs and difference in time resulting from such conditions.
The above language has a forty year history and is generally referred to as a "changed conditions clause." The wording is identical to one of the early forms appearing in United States government construction contracts. The clause was designed to provide for an adjustment between the public works contractor and the government because of increases or decreases in costs resulting from the encountering of conditions differing materially from those contemplated in the contract. Governmental units other than the United States government have adopted the changed conditions clause (including, in this case, the town). The purpose of the clause is to assure that a bidder will not include in his bid a sum to protect him against loss resulting from unforeseen conditions, but will rely on the governmental unit's promise to grant him an equitable adjustment if the unforeseen occurs.
A substantial body of law has been developed, primarily in the federal courts, construing the above quoted language. Those decisions are comprehensively treated in an annotation at 85 ALR 2d 211 (1962). There being no Florida cases construing a changed conditions clause, we choose to follow the lead of cases decided elsewhere, as reported in the annotation. We find it unnecessary, in view of the comprehensive treatment in the annotation, to cite specific cases. Suffice it to say that the reported decisions support recovery of the contractor in the case before us. It has been held that, where conditions are in fact materially different from those contemplated by the contract, relief is not to be denied because of the presence in the contract of one or more of various admonitory or exculpatory clauses, such as one requiring the contractor to examine the construction site. Furthermore, we are not inclined to view the requirement that the contractor examine the construction site, under the circumstances of this case, as contemplating that the contractor make its own separate test borings before submitting its bid.
The town takes the position that the contractor is nevertheless precluded from recovery because of provisions in the contract requiring that any modification of the contract terms or the contract price must be in writing.[1] We do not agree. It is clear that the only burden on the contractor under the changed conditions clause was to call the attention of the town's engineer to the unexpected conditions and the contractor did so. 85 ALR2d at 233.
We conclude, therefore, that the trial judge was eminently correct in determining that the contractor was entitled not only to the balance of the contract price, but to the additional costs incurred by the contractor in using the caisson method of construction. We also have no quarrel with the trial judge's conclusion as to the number of days of delay. This leaves only the question whether the contractor was entitled to prejudgment interest on those amounts.
With respect to the Florida rule on entitlement to prejudgment interest in actions *723 ex contractu, this court has recently had occasion[2] to cite with approval a decision of the United States District Court for the Middle District of Tennessee in Tampa Electric Company v. Nashville Coal Company, 214 F. Supp. 647 (M.D.Tenn. 1963). In that case, the federal court concluded that Florida follows the traditional rule of allowing prejudgment interest where a claim is liquidated, but not where a claim is unliquidated. The court pointed out, however, that in Florida, as in other jurisdictions, the distinction between liquidated and unliquidated damages has been substantially blurred insofar as the allowance of interest is concerned. The test in Florida, as noted in the Tampa Electric case, seems to be that a claim is unliquidated when the amount of the damages cannot be computed except on conflicting evidence, inferences and interpretations.
In this case, the contractor promptly advised the town that the additional costs it incurred in using the caisson method totaled $33,269.22. This is the exact amount alleged and proved by the contractor in this suit and this is the exact amount which the final judgment awarded to the contractor. The town does not dispute that figure on this appeal, nor does it dispute the contractor's entitlement to the balance of the contract price. Under these circumstances, we decline to classify any part of the contractor's demand as "unliquidated" for purposes of determining the allowance of prejudgment interest. We hold that the contractor is entitled to interest on the total amount awarded to it in the final judgment, computed from July 4, 1975. Snead Construction Corp. v. Langerman, Nos. GG 199 and HH-395 (Fla. 4th DCA, June 12, 1978); annot., 60 ALR 3d 487 (1974).
Affirmed in part, reversed in part, and remanded.
GRIMES, C.J., and OTT, J., concur.
NOTES
[1] We note that the contract does not contain a clause, usually found in public works contracts, providing that no extra work be done unless authorized in writing. Even so, it is at least questionable whether such a clause would apply to extra work occasioned by conditions being other than as represented to the contractor. See annot., 76 ALR 268, 276.
[2] Gulfport Guaranty & Fidelity Corp. v. Jones Plastering & Stucco, Inc., 360 So.2d 1098 (Fla. 2d DCA 1978).