648 So.2d 140 (1994)
HENDRY CORPORATION, a Florida corporation, Appellant,
v.
METROPOLITAN DADE COUNTY, a political subdivision of the State of Florida, Appellee.
No. 92-44.
District Court of Appeal of Florida, Third District.
August 24, 1994.
Order Denying Rehearing January 4, 1995.
Charles S. Dale, Jr., and Richard L. Halpern, Ft. Lauderdale, Smith & Fleming and George D. Weniock, Peter M. Crofton and Kent Smith, Atlanta, GA, for appellant.
Robert A. Ginsburg, Dade County Atty., and Jay W. Williams, Asst. County Atty., for appellee.
Before BARKDULL[1], BASKIN, and JORGENSON, JJ.

ON MOTION FOR REHEARING GRANTED
JORGENSON, Judge.
On consideration of Dade County's motion for rehearing, we grant the motion, withdraw our opinion filed October 26, 1993, and substitute the following opinion in lieu thereof.
The Hendry Corporation appeals from a final judgment finding that Dade County is *141 not liable for additional costs incurred on a public project to demolish the old Rickenbacker Causeway connecting Key Biscayne to the mainland. We affirm.
Dade County solicited bids to demolish the old Rickenbacker Causeway bascule span and provided all bidders with a set of demolition plans and specifications for the project. The 1941 plans of the original bascule span were made available to the bidders for inspection before the bid deadline. Hendry submitted the lowest bid and the County awarded it the contract in December, 1985. Hendry's bid was based on its conclusion that the pilings supporting the old bridge were made of concrete. This conclusion was based upon visual observations, past experience, and an examination of the 1941 bascule plans.
Hendry encountered problems with the demolition and failed to complete the project within the time period specified by the contract. The County withheld $81,900 of the contract proceeds as damages for delayed completion. Hendry sued Dade County for breach of contract, alleging that the County was liable for costs that arose from unexpected site conditions. Specifically, Hendry alleged that after it started work on the project, it encountered two differing site conditions that required an equitable adjustment of the contract price.[2] The first differing site condition alleged was the existence of wooden, rather than concrete pilings. Hendry contended that Dade County had an obligation to provide the bidders with the 1941 specifications for the bascule which would have shown that the pilings were wooden. Demolition of structures supported by wood pilings is more difficult than demolition of structures supported by concrete pilings. The second differing site condition that Hendry alleged made demolition more difficult and therefore more expensive was subsurface debris that remained from the original construction project. Hendry claimed that Dade County was aware of the debris but failed to notify the bidders.
Hendry asked the trial court to instruct the jury that Dade County had a duty to disclose to prospective bidders all available information relating to the project, and to warrant that the plans and specifications provided were full, complete, and accurate. The trial court denied Hendry's request; the jury returned a verdict for the County.
The trial court properly declined to instruct the jury as Hendry requested, as the requested instructions did not provide an accurate statement of the law concerning Dade County's duty to disclose. See Giordano v. Ramirez, 503 So.2d 947, 949 (Fla. 3d DCA 1987) (requested instructions must contain accurate statement of law, and facts of case must support giving those instructions).
In seeking reversal, Hendry asks this court to impose upon Dade County a duty heretofore not recognized in Florida  that Dade County had an obligation to disclose facts in its possession when its superior knowledge or silence would convey a false impression, even when it has made no affirmative misrepresentation. However, our courts have recognized only that the government has an affirmative duty to provide bidders with information that will not mislead them. Jacksonville Port Auth. v. Parkhill-Goodloe Co., 362 So.2d 1009 (Fla. 1st DCA 1978); Town of Longboat Key v. Carl E. *142 Widell & Son, 362 So.2d 719 (Fla. 2d DCA 1978). See also Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988). The law in Florida also provides that where a contractor is misled by relying on inaccurate representations, a disclaimer clause requiring inspection of the site will not prevent the contractor from recovering additional costs under a differing site conditions clause. Jacksonville Port Auth., 362 So.2d at 1012 (citing United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735 (1920)); Miami-Dade Water & Sewer Auth. v. Inman, Inc., 402 So.2d 1277 (Fla. 3d DCA 1981), rev. denied, 412 So.2d 466 (Fla. 1982). However, a differing site conditions clause will be "triggered only where an inaccurate representation is relied on, not where there has been no representation." Inman, 402 So.2d at 1278 n. 2 (emphasis supplied). Moreover, in the absence of such misrepresentation, there will be no recovery under the differing site conditions clause if the contractor relies on its own inadequate investigation. Inman, 402 So.2d at 1278 n. 2.
Under the prior standard established by Florida cases, Dade County breached no duty to prospective contractors; it did not represent any material fact to the contractor that later turned out to be false. In Jacksonville Port Auth., the Port Authority furnished the contractor with boring reports that indicated that there was no significant rock in the area to be dredged. The Port Authority, however, was on notice that rock was in the area because another dredging contractor in an earlier project for the Port Authority encountered extensive rock in an adjacent area. The contract guaranteed that the information provided in the boring reports gave a general indication of the materials likely to be found. The court held that there was a duty to furnish information which would not mislead prospective bidders and found that the Port Authority misled the contractor by providing the boring reports knowing that they were inaccurate. Jacksonville Port Auth., 362 So.2d at 1013.
In Town of Longboat Key, the contractor also relied on misleading information provided by the town. To prepare its bid, the contractor relied on a subsurface soil analysis and an investigation provided by the town. The investigation indicated that the excavations could be kept dry by using the well pump method of dewatering. The contract specifications called for dewatering by the method suggested in the investigation. When the contractor began excavating, however, it encountered a high water level, and as a result, it had to use another more expensive method of dewatering. The court, recognizing that the contract contained a differing site conditions clause, held that the contractor could recover the additional costs even though the contract also contained an exculpatory clause requiring the contractor to examine the construction site. Town of Longboat Key, 362 So.2d at 722. These decisions simply do not stand for the proposition that the governmental entity has a duty to disclose all information in its possession that may be material to the bidding process.
In this case there was no misrepresentation by the County. Dade County never represented that the pilings were made of concrete, and the 1941 plans did not indicate that the old pilings were made of concrete. At trial, Aaron Hendry, the President of Hendry Corporation, testified that the 1941 plans were not clear as to the pilings' composition. Hendry also testified that the tapering shape of the old pilings was consistent with wooden pilings made from tree trunks.
Although Dade County did not provide the 1941 specifications for the bascule, which indicated that the bridge was supported by wooden rather than concrete pilings, there is no evidence in the record that Dade County withheld the 1941 specifications from Hendry. In fact, Hendry Corporation stated in response to interrogatories that in demolition projects, no owner had ever supplied it with specifications of the original structure. Hendry's Assistant Vice President for Engineering testified that in his many years of experience on demolition projects, specifications for the original projects were not provided with the original plans.
Dade County made no representations in the bid documents regarding the condition of the bay bottom. Although the County paid a contractor who had worked on the new *143 bridge span additional money due to a differing site condition, the subsurface debris encountered during construction of the new bridge was found beneath dry land under fill, on the mainland side of the bay. The subsurface debris encountered by Hendry was found under both water and bay bottom dirt, beneath the draw-bridge mechanism located midway on the old bridge connecting the mainland to Virginia Key. The County had no duty to disclose the additional payment it had made to another contractor, particularly where there was no indication that the debris found under the dry land was similar to the underwater debris that Hendry encountered. Moreover, there was substantial competent evidence presented at trial that Hendry knew, or should have known, that it would encounter subsurface debris.
In sum, we hold that the trial court properly instructed the jury, as Dade County has no duty to provide information to a contractor when the contractor knows, or should have known, of the conditions disclosed by the information, or where the bidding documents do not misrepresent material facts.
AFFIRMED.
BARKDULL, J., concurs.
BASKIN, Judge (dissenting).
I disagree with the majority's conclusion that the trial court properly instructed the jury. Appellants' requested instruction was an accurate statement of the law regarding Dade County's duty. A DSC, or differing site conditions clause, is found in most public works contracts. The clause shifts the normal contractual risk of additional costs incurred from an unexpected condition from the bidder to the contracting public authority. The purpose of the clause is to protect the public from high bids by government contractors by assuring the bidder that the governmental authority will reimburse the bidder for increased costs resulting from unexpected conditions at the site. Town of Longboat Key v. Carl E. Widell & Son, 362 So.2d 719, 722 (Fla. 2d DCA 1978).[3] Its effect, therefore, is to lower bid prices and reduce government costs.
Conditions are considered unexpected if they either vary materially from those shown in the plans and specifications or, although not in conflict with the documents, differ materially from those ordinarily encountered in the kind of work provided for in the contract. Noralyn O. Harlow, Annotation, Construction and Effect of "Changed Conditions" Clause in Public Works or Construction Contract with State or its Subdivision, 56 A.L.R. 4th 1042, 1048 (1987); 65 Am.Jur.2d Public Works and Contracts 182 (1972).
To recover under the DSC clause, the contractor need not prove fault or bad faith on the part of the government. The contractor must show only that conditions materially different from those indicated in the contract or reasonably anticipated were encountered. Overton A. Currie, et al., Briefing Papers, (Fed.Pubs., Inc., Oct. 1971). Courts have granted relief, therefore, where the government innocently misled bidders or honestly failed to discover the actual conditions. See, e.g., D. Federico Co. v. New Bedford Redevelop. Auth., 723 F.2d 122 (1st Cir.1983) (contractor entitled to equitable adjustment for costs arising from unexpected presence of concrete piles); Woodcrest Constr. Co. v. United States, 408 F.2d 406, 187 Ct.Cl. 249 (1969) (existence of high ground-water table not shown in government core boring logs constituted changed condition); Phillips Constr. Co. v. United States, 394 F.2d 834, 184 Ct.Cl. 249 (1968) ("quagmire" conditions at project site constituted changed conditions where there was nothing to put bidder on notice of drainage problems).
Hendry showed that the 1941 Specifications, if they had been provided, would have indicated that the bridge was supported by wood rather than concrete pilings. At trial, Hendry's experts testified that the visual inspections Hendry performed prior to the bid revealed only the concrete exterior of the pilings and that those concrete pilings were consistent with the type of piling commonly *144 used on the size and type of bridge to be demolished. As to the unexpected subsurface debris  the second alleged differing site condition  Hendry presented evidence showing that the County had paid another contractor on the Rickenbacker Bridge project additional money for costs associated with the debris, conceding in that instance that it constituted a differing site condition.
Hendry was entitled to a jury instruction consistent with Florida law regarding Dade County's obligations under the DSC clause. In addition to the contractual duty provided by the DSC clause, general principles of Florida law regarding public construction projects impose a duty on Dade County to disclose relevant or material information to the bidders.

Public Authority's Duty to Disclose
When a government authority is in possession of information pertinent to the cost or feasibility of a construction project, the government has a duty to disclose to the bidders the facts of which the authority has knowledge. D. Federico Co., 723 F.2d at 125; Wm. A. Smith Contracting Co. v. United States, 412 F.2d 1325, 188 Ct.Cl. 1062 (1969); Leal v. United States, 276 F.2d 378, 383, 149 Ct.Cl. 451 (1960). Where the government's failure to produce such information has the effect of misleading the contractor with regard to the physical condition of the job site, the contractor is entitled to an equitable adjustment. D. Federico Co., 723 F.2d at 126. A governmental entity, therefore, has a duty to disclose facts in its possession, even where the public authority has made no affirmative misrepresentation, where it has superior knowledge or where silence could convey a false impression. Gregory G. Sairio, Annotation, Public Contracts: Duty of Public Authority to Disclose to Contractor Information Allegedly in its Possession, Affecting Cost or Feasibility of Project, 86 A.L.R.3d 182, 191 (1978). The government's failure to disclose vital information entitled the contractor to an equitable adjustment in the same way that such adjustment protects the contractor from additional costs based on erroneous information. This theory of recovery is often called the government superior knowledge theory. Like the DSC clause, it shifts the risk of unanticipated costs from the contractor to the governmental entity. Louis O. Vitorino, et al., Briefing Papers, (Fed. Pubs., Inc., Sept. 1992).
Consistent with the government superior knowledge theory, in a case with facts similar to the instant case, the first district, in Jacksonville Port Auth. v. Parkhill-Goodloe Co., 362 So.2d 1009 (Fla. 1st DCA 1978), held a governmental agency liable for additional costs incurred for extended time to complete a contract. Setting forth the government's duty to furnish relevant information to bidders, the court wrote:
[The government] had a duty to furnish information which would not mislead prospective bidders and to not withhold from prospective bidders information that another dredging contractor, in an adjacent area, had encountered extensive rock in dredging to the depth required by appellee here.
Id. at 1013. See also Miami-Dade Water & Sewer Auth. v. Inman, Inc., 402 So.2d 1277 (Fla. 3d DCA 1981) (government has duty not to mislead bidders by withholding available information), rev. denied, 412 So.2d 466 (Fla. 1982).
Contrary to the principle cited above, the trial court was of the view that although Florida law forbids the County from providing inaccurate information, it does not impose an affirmative duty to provide prospective bidders with material information in its possession pertinent to the cost and feasibility of the project. The court's ruling is clearly inconsistent with Florida law governing public construction contracts. With a proper instruction the jury could have concluded, as in Parkhill-Goodloe, that the government breached a duty to disclose the fact that another contractor had encountered unexpected subsurface debris on the same project. Similarly, the government may have breached a duty to disclose material or relevant information, where, as here, the bidder had specifically requested information in the government's possession thereby putting the government on notice that the bidder lacked certain information relevant to making an informed bid.

*145 Conclusion

In conclusion, the DSC clause of a contract is triggered where the subsurface or latent physical conditions at the site differ materially from those indicated in the agreement or where unknown physical conditions at the site, which would not have been discovered in a routine inspection, differ materially from those ordinarily encountered in the type of work to be performed. There is no requirement for the bidder to show fraudulent misrepresentation or omission.
As to Dade County's liability for failure to disclose information under the government superior knowledge theory, the jury should have been instructed that if it found that Dade County withheld information material or relevant to formulating a bid, or made an affirmative misrepresentation which was relied on by the bidder, the government would be liable for an equitable adjustment. I would reverse and remand for a new trial.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN, JJ.

ON MOTION FOR REHEARING
PER CURIAM.
Rehearing denied.
BARKDULL and JORGENSON, JJ., concur.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
Motion for rehearing en banc denied.
SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN, JJ., concur.

ON MOTION FOR REHEARING
BASKIN, Judge (dissenting).
I would grant the motion for rehearing.

ON MOTION FOR REHEARING EN BANC
BASKIN, Judge (dissenting).
I would grant the motion for rehearing en banc.
NOTES
[1] Judge Barkdull did not hear oral argument.
[2] The "Differing Site Conditions" clause of the contract provided as follows:

The Contractor shall promptly, and before such conditions are disturbed, notify the Engineer in writing of: (1) Subsurface or latent physical conditions at the site differing materially from those indicated in this Contract, or (2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as in work of the character provided for in this Contract. The Engineer will promptly investigate the conditions, and if he finds that such conditions do materially differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of any part of the work under this contract, whether or not changed as a result of such conditions, an equitable adjustment will be made and the contract modified in writing accordingly.
No claim of the Contractor under this clause will be allowed unless the Contractor has given the notice required above; provided, however, the time prescribed therefore may be extended by the Department.
No claim by the Contractor for an equitable adjustment hereunder will be allowed if asserted after final payment under this Contract.
[3] The clause correspondingly grants relief to the governmental authority. If, as a result of a differing site condition, the cost or performance time is decreased, the government is entitled to a reduction in price or contract time.